[No. 29957.   Department One.   June 7, 1946.]

THE STATE OF WASHINGTON, *on the Relation of Henrietta P. Haugland, Plaintiff,* v. RALPH SMYTHE, *as Judge of the Superior Court for Clallam County, Respondent.*[1]

[1]Reported in 169 P. (2d) 706.

*The Attorney General* and *Elroy F. Wiehl, Assistant,* for relator.

*Max Church,* for respondent.

STEINERT, J.—The question presented herein for decision is this: Has a judge of the superior court, while conducting a juvenile case, the right by subpoena *duces tecum* to compel an administrator of the county welfare department to produce in court the original confidential file of such department concerning a delinquent minor child, for inspection and use of such file by the juvenile court in the matter then pending and affecting the delinquent minor?

Owing to the partly informal manner in which the question in issue was presented to and determined by the juvenile court, the record in this case is not as full, nor as clear and definite, as we should prefer to have it. Our statement of the facts with reference to the controversy is therefore necessarily based upon the information derived from an equivocal record supplemented by the briefs and oral argument of counsel.

The relator, Henrietta P. Haugland, is the duly authorized and acting "administrator" of the welfare department of Clallam county. The respondent, Ralph Smythe, is the duly qualified and acting judge of the superior court for the same

county and, as such, has charge of juvenile matters in that county.

In September, 1944, a proceeding was instituted in the juvenile department of the superior court for Clallam county designating Edward Wournell, then approximately fourteen and one-half years of age, as a delinquent child. After a hearing in that proceeding, the court entered an order permitting the youth to return to and remain with his parents, upon certain stated conditions.

In April, 1946, the matter demanded further consideration and disposition by the juvenile court. Edward had then reached the age of sixteen years. In the course of the renewed proceeding, the court on April 3rd caused to be issued a subpoena *duces tecum* commanding the relator to appear in court on April 8th, then and there to give evidence concerning the matter under investigation and also to bring with her into court the complete original file of the county welfare department bearing upon Edward Wournell, the named delinquent child.

It appears that, for some time prior to this last-mentioned proceeding, the county welfare department had aided the named child or his parents through its programs for general public assistance and aid to dependent children. In dispensing that assistance, the welfare department maintained three separate, distinct files, in each of which the child, Edward Wournell, was mentioned. Two of those files pertained to Ida May Wournell, now deceased, mother of Edward, and had reference to requests by her for work relief and placement and for aid to her two children, including Edward, and also contained memoranda of advice given to the mother concerning a possible annulment of marriage. The third file pertained to the grandparents, also spoken of as the adoptive parents, of Edward, and contained information relative to the grandparents' application for old age assistance and for aid to the two adoptive children, including Edward.

As on similar occasions in the past, the administrator, in response to the subpoena *duces tecum*, informed the juvenile court that she was forbidden by the rules and regula-

tions of the welfare department to produce in court the original records in such matters. However, as also on former occasions and in accordance with the past policy of the department of social security and of the various county welfare departments, the administrator did submit to the court an analysis or summary of the record, as prepared by herself or under her supervision, which summary, in her opinion, contained all pertinent facts, data, and recommendations relative to the child Edward, but she declined to produce the original records thereon. Her refusal to submit the original files was based on the ground that such disclosures would be in violation of chapter 128, p. 382, § 5, Laws of 1941 (Rem. Supp. 1941, § 10007-106b [P.P.C. § 917-9]) and §§ 1, 4, and 8 of rules and regulations No. 212.6 of the state department of social security.

After examining the analysis, or summary, submitted by the administrator, the respondent judge made a finding that it was inadequate. In a memorandum opinion subsequently rendered, the judge expressed his views at some length, giving his reasons for requiring the original files. Among those reasons were the following: (1) In at least one prior summary which had been submitted to the court by the welfare department, "gross errors of fact were included, and the conclusions drawn from them were dangerously inaccurate"; (2) such summaries rarely show the source of the information included therein, and hence there is no way to determine the relative weight of the evidence on which the social worker based his or her opinion; (3) partly because of the shortage of qualified help, the county welfare department has been unable to supply such summaries within a reasonable time, whereas the original records could, in every case, be promptly produced; and (4) summaries are usually prepared by persons who are untrained workers and whose summary reports are therefore inadequate.

The opinion further emphasized the fact that the desired information had been requested for the court's "own use in determining the ultimate disposition of a maladjusted child," and pointed out that the practice obtaining generally in all juvenile courts in this state was to conduct such juve-

nile hearings privately and to withhold from public inspection the records obtained from the administrators of assistance programs.

Having set forth at length its reasons for requiring the original records, the memorandum opinion concluded with an order directing the administrator to produce such records on a day set, under penalty of being held in contempt for failure to do so. The administrator thereupon filed in this court an application for a writ of certiorari to review the order made by the juvenile court.

Relator's contention is that the records of the welfare department are confidential, in that they involve communications which are privileged against disclosure. The basis of this contention is predicated upon that portion of the Federal social security act relative to state plans for aid to dependent children, found in 49 Stat. 627, § 402, as amended by 53 Stat. 1379, § 401, 42 U.S.C.A. 593, § 602 (a), which provides:

"A State plan for aid to dependent children must . . . (8) provide safeguards which restrict the use or disclosure of information concerning applicants and recipients to purposes directly connected with the administration of aid to dependent children."

A subsequent section provides that, upon failure to comply substantially with any provision required by § 602 (a), the Federal social security board shall notify the state agency that further payments will not be made to the state until the board is satisfied that there is no longer any such failure to comply. 49 Stat. 628, § 404, 42 U.S.C.A. 595, § 604.

Pursuant to the provisions of the Federal act, the legislature of this state enacted chapter 128, Laws of 1941, p. 379 (Rem. Supp. 1941, § 10007-103a [P.P.C. § 922-7] *et seq.*), § 5 of which act provides:

"The rule-making power of the Department of Social Security shall include the power to establish and enforce reasonable rules and regulations governing the custody, use and preservation of the records, papers, files and communications of the State Department of Social Security and the County Welfare Departments. The use of such records, papers, files and communications by any other agency or

department of government to which they may be furnished shall be limited to the purposes for which they are furnished. It shall be unlawful except for purposes directly connected with the administration of general assistance, old-age assistance, aid to the blind and aid to dependent children and in accordance with the rules and regulations of the State Department of Social Security for any person or persons to solicit, disclose, receive, make use of, or to authorize, knowingly permit, participate in, or acquiesce in the use of, any list, or names of, or any information concerning, persons applying for or receiving such assistance, directly or indirectly derived from the records, papers, files or communications of the state or county or subdivisions or agencies thereof or acquired in the course of the performance of official duties." Rem. Supp. 1941, § 10007-106b.

Under the authority of the state legislative act, the state department of social security promulgated a set of rules and regulations, numbered 212.6, of which the relator relies particularly upon the following:

"1. Names and addresses of persons applying for or receiving public assistance, including lists of such persons, information contained in applications, reports of investigations, reports of medical examinations, correspondence and other records concerning the condition or circumstances from whom, or about whom information is obtained, and including all such information whether or not it is recorded, and records of agency evaluation of such information shall be confidential and may not be used either directly or indirectly except for purposes directly connected with the administration of public assistance.

"4. . . . All information concerning applicants for and recipients of public assistance which is procured by or available to the department is the property of the department and may be used only in accordance with the rules and regulations governing its use. . . .

"8. No employee or representative of the department shall release any confidential information concerning public assistance applicants or recipients either by written records or oral testimony in any court proceeding, except where such proceeding involves the administration of the public assistance program. In the event that any employee or representative of the department or any record of the department is subpoenaed, the representative of the department shall answer the subpoena and shall in court plead the

regulation and the law safeguarding public assistance information as the basis for withholding such information from disclosure in court."

It will be noted that the intent of the Federal statute quoted above is to restrict the use or disclosure of such information to purposes directly *connected with* the administration of aid to dependent children, and that the state act empowers the department of social security to establish and enforce *reasonable* rules and regulations for safeguarding official information against disclosure or use thereof except for purposes directly *connected with* the various kinds of public assistance. It will further be noted that the rules and regulations adopted pursuant to the foregoing statutes seek to accomplish the same end, and, anticipating that such records may in certain litigation be subpoenaed, they provide that the officer to whom the subpoena is directed shall appear in court and *plead* such rules and regulations. It is significant that this provision of the rules and regulations does not command or suggest that the officer thus subpoenaed shall in all events *disobey* any order of the court relative to the production of such records and the disclosure of the information contained therein, but only prescribes that the officer shall by proper plea inform the court of the existence and prohibitive requirement of the rules.

The superior courts of this state were created by, and received their powers from, the Washington constitution, Art. IV, §§ 1, 6. When adjudicating cases pertaining to dependent and delinquent children the superior court is, for convenience, called the "juvenile court."

It is an inherent power of a court of justice, within the sphere of its jurisdiction, to compel witnesses to appear before it and testify concerning any relevant facts within their knowledge, in a case then pending in that court. Without such power, courts would cease to function and causes presented to them could not be conducted.

"It is a general rule of law and necessity of public justice that every person is compellable to bear testimony in the administration of the laws by the duly constituted courts of the country." 28 R.C.L. 419, Witnesses, § 3.

■ For several centuries it has been recognized as a fundamental maxim that it is the general duty of every man to give what testimony he is capable of giving. Any exemptions from that positive general rule are distinctly exceptional. Chief among such exemptions are those arising out of claims of testimonial privilege, concerning either a topic or class of facts in the knowledge of the witness, or a communication made in confidence by another person. Certain communications made between persons occupying a confidential relation to each other are in law held to be privileged.

It is the relator's contention in this case that the information sought by the juvenile court involves privileged communications and therefore is exempt from disclosure.

■ The mere fact that a communication was made in confidence, express or implied, does not of itself create a privilege. As stated in 8 Wigmore on Evidence (3d ed.) 531, § 2285, there are four fundamental conditions necessary to the establishment of a privilege against disclosure of communications between persons standing in a given relation: (1) The communication must originate in a confidence that it will not be disclosed; (2) the element of confidentiality must be essential to the full and satisfactory maintenance of the relation between the parties; (3) the relation must be one which in the opinion of the community ought to be sedulously fostered; and (4) the injury that would inure to the relation by the disclosure of the communication must be greater than the benefit thereby gained for the correct disposal of litigation.

■ We have no doubt that the records of the county welfare department would be exempt from disclosure to those who are motivated simply by curiosity, and, in situations such as are here involved, we may assume that the same exemption could be successfully invoked where the information was sought for purely commercial, personal, or political purposes, or as a basis for creditors' suits or similar proceedings. None of those features, however, is present in this case. The information sought by the juvenile court

was for its own use in determining the ultimate disposition of a maladjusted child.

The facts in the case, as stated above and as appear from relator's own brief, clearly reveal that the child's destiny thus far has been intimately connected with, and to some extent at least shaped by, the financial condition of those in whose custody he was retained and by the assistance which the county welfare department periodically extended, or was asked to extend, to his parents and grandparents. There is a strong probability, amounting almost to a certainty, that, in its ultimate disposition of this matter, the juvenile court will take into consideration the financial condition of the person or persons to whose custody Edward will be assigned and the source and extent of the public aid that reasonably may be expected to be extended in his behalf. All of these considerations, as well as others, enter into a proper determination of the child's welfare.

It is undoubtedly true that the officers of the welfare department should exercise every precaution to safeguard its records against disclosure, in accordance with the spirit and rules of the social security act; but we do not believe that either the act or the rules promulgated in pursuance thereof contemplate or comprehend situations involving the administration of juvenile court matters.

So far as the secrecy of such records of the welfare department is concerned, we are confident that it will as wholeheartedly be respected and as sedulously be preserved by the juvenile court as it will be by the officers of the welfare department. Rem. Rev. Stat., § 1987-10 [P.P.C. § 359-19], to which the respondent judge herein referred in his memorandum opinion, makes adequate provision not only for private hearings in such matters, but also for the withholding of all reports in such cases from public inspection and for their ultimate destruction.

In our opinion, the original records of the welfare department do not constitute privileged communications, in matters of the present kind, within the purview of the conditions stated above, in that (1) the element of confidentiality is not, in such instances, essential to the full and

satisfactory maintenance of the relations between the parties concerned, and (2) the injury that is alleged would inure to the relation by the disclosure of the communications is not greater than, nor as great as, the benefit gained for the correct disposal of litigation.

The only case that has been cited to us as bearing directly upon the question here involved, is *Bell v. Bankers Life & Cas. Co.*, 327 Ill. App. 321, 64 N. E. (2d) 204. That case supports our conclusion herein. It was there held that the records of a county bureau of public welfare, produced in court in response to a subpoena *duces tecum,* were admissible in evidence, in the face of a statute similar to our statute and the rules promulgated pursuant thereto. The decision in that case, relating as it did to litigation between private individuals, went even further than is necessary to go here.

In reaching our conclusion, we are mindful of relator's apprehension that her production of the original records and her disclosure of their contents may result in the loss of Federal contributions to the state for public assistance. We do not believe that the Federal statute quoted above contemplates a restriction against disclosure of information under circumstances presented by this case; nor do we believe that any Federal board, acquainted with the manner in which juvenile hearings are conducted in this state and the ends which they are earnestly seeking to accomplish, will arbitrarily or peremptorily terminate its obligations to furnish public assistance within this jurisdiction simply because the juvenile courts are given access to the records of the county welfare department for judicial inspection and use in matters vitally affecting those for whom such public assistance is required.

The order of the juvenile court is affirmed.

BEALS, C. J., MILLARD, SIMPSON, and MALLERY, JJ., concur.