Coda M. **FEARS** et al., Plaintiffs,

v.

**BURRIS MANUFACTURING COM-
PANY, Defendant.**

No. EC 6822.

United States District Court
N. D. Mississippi, E. D.

Oct. 29, 1969.

Robert B. Fitzpatrick and Frank R. Parker, Jackson, Miss., for plaintiffs.

Fred M. Bush, Jr., of Mitchell, McNutt & Bush, Tupelo, Miss., Thomas C. Bradley, Jr., Spartanburg, S.C., for defendant.

H. L. Hutcherson, Jackson, Miss., for Mississippi Employment Security Commission.

## MEMORANDUM OPINION

ORMA R. SMITH, District Judge.

This case is before the Court on Motion of Marvin Wooten, Manager, Mississippi Employment Security Commission, Aberdeen, Mississippi,[1] to quash a subpoena duces tecum served on him by plaintiffs in connection with a deposition to be taken in the case sub judice in which Motion Wooten asserts a privilege with which he claims to be clothed by virtue of Mississippi statutory law.

Plaintiffs, Coda M. Fears and others, are Negro citizens of Aberdeen and West Point, Mississippi, and reside in the State of Mississippi within the area served by the Eastern Division of the United States Court for the Northern District of Mississippi. Defendant Burris Manufacturing Company,[2] operates a factory or plant at or near Aberdeen, Mississippi, in said district, and is an employer subject to the provisions of the Mississippi Employment Security Law.[3]

Plaintiffs, on April 10, 1968, filed their complaint herein charging Burris with the violation of certain provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.[4] by refusing to employ plaintiffs solely because of their race. Plaintiffs bring the action sub judice in their own behalf and in behalf of all other members of their class. It is a proper class action.

Plaintiffs charge Burris with unlawful and discriminatory employment practices at its plant in violation of the Civil Rights Act of 1964.

Plaintiffs allege in the complaint that when they went to Burris seeking employment, they were told that applications should be filled out at MESC's Aberdeen office, and, when they went there, they were told that no jobs were available at Burris' plant and no applications could be made for employment there.

Plaintiffs further allege in the complaint that Burris has subsequently hired numerous new employees; that Burris sometimes trains new employees for jobs in its plant; that none of the named plaintiffs or members of their class have been hired or offered such training; that plaintiffs and members of their class are qualified to work or to be trained for jobs with Burris; and that plaintiffs and their class were not employed or offered training because they are members of the Negro race.

It is shown in the record that since July, 1966, Burris has hired all employees, other than staff members, through

---

1. The Mississippi Employment Security Commission will be referred to in this opinion as "MESC".

2. Burris Manufacturing Company will be referred to in this opinion as "Burris".

3. § 7368 et seq. Mississippi Code, 1942, Annotated, Recompiled, referred to in this opinion as the "Act".

4. This Act will be referred to in this opinion as the "Civil Rights Act of 1964".

the facilities of MESC's Aberdeen office. The groups hired through MESC consist of production, maintenance and clerical employees.

When Burris needs additional personnel, job orders are usually placed via voice with MESC. The applications received by MESC are retained in its office and constitute a part of its records. These applications are not sent to Burris or made a part of Burris' records. Where an applicant passes the scrutiny of MESC, and is referred to Burris, an application is taken by Burris for its records.

As a result of the manner in which the employment requirements of Burris are filled, practically all of the basic employment records are made and retained by MESC.

After developing the situation above mentioned through discovery depositions of Burris executives, plaintiffs noticed the deposition of Wooten, and served him with subpoena duces tecum requiring the production of records maintained by MESC in connection with employment services rendered Burris.[5]

It is clear that the information contained in the employment records of Burris in the possession and under the control of MESC are essential to the prosecution of plaintiffs' case against Burris. The only available records, of any consequence, concerning employment practices of Burris are those in the MESC office.

After service of the subpoena, Wooten presented a Motion to the Court to quash the subpoena, contending that the records in his possession were confidential and privileged by virtue of § 11(g) (1) of the Act.

An order to stay the deposition until the issue could be decided was entered by the Court. The matter is before the Court for decision on the record, briefs and argument of the parties.

The kind of records maintained by MESC, pursuant to the Act for the employers under its jurisdiction, contain, inter alia, job requirements of employers, job orders, job titles, working conditions, hiring and employment policies, pay rates, staffing patterns, etc. MESC makes referrals and renders other employment services to employees.

It is provided by § 11(g) (1) of the Act that each employing unit shall keep true and accurate work records, containing such information as MESC may prescribe.[6]

---

5. The records sought to be produced in connection with Wooten's deposition are shown by the subpoena to be:

"Documents, as used herein, means, without limitation, all originals or copies of files, letters, notes, memoranda, reports, pamphlets, clippings, minutes, charts, account books, tallies, records, photographs, or other written or graphic material within your care, custody, or control.

1. All copies of MSES Form 300D, or any revision thereof, on or relating to employment by Burris Manufacturing Company at its Prairie, Mississippi plant from July 2, 1965 to present.

2. Any documents or memoranda consisting of or reflecting any evaluation of services provided by MSES or MESC to Burris Manufacturing Company at its Prairie, Mississippi, plant from July 2, 1965 to present.

3. All copies of MSES Form 514, or any revision thereof, for all job orders placed by the Prairie, Mississippi, plant of Burris Manufacturing Company from July 2, 1965 to present.

4. All other documents relating to employment or promotions at the Prairie, Mississippi plant of Burris Manufacturing Company from July 2, 1965 to present.

5. Copies of all tests administered to referrals to Burris Manufacturing Company.

6. Copies of any job descriptions provided by Burris Manufacturing Company."

6. § 11(g) of the Act is involved in this controversy and is as follows:

"§ 7411. Records and reports. Each employing unit shall keep true and accurate work records, containing

An "employing unit" is defined in the Act as "any individual or type of organization, including any partnership, association, trust, estate, * * * which has or subsequent to January 1, 1935, had in its employ one or more individuals performing services for it within this state".[7]

An "Employer" is defined by the Act as "any employing unit which for some portion of a day, but not necessarily simultaneously, in each of twenty different weeks, whether or not such weeks are or were consecutive, within either the current or the preceding calendar year, including employment up to and through December 31, 1955, has or had in employment, eight or more individuals (irrespective of whether the same individuals are or were employed in each such day)".[8]

It is required by § 11(g) (1) of the Act that the records kept and maintained by employing units shall be open to inspection and be subject to being copied by the Commission or its duly authorized representatives at any reasonable time as may be necessary. The Commission, Board of Review, and any referee may require from any employing unit any sworn or unsworn reports, with respect to persons employed by it, which they or any of them deem necessary for the effective administration of the Act.

Information thus obtained, or obtained from any individual pursuant to the administration of the Act is declared to be confidential, except to the extent neces-

---

such information as the commission may prescribe. Such records shall be open to inspection and be subject to being copied by the commission or its authorized representatives at any reasonable time and as often as may be necessary. The commission, Board of Review, and any referee may require from any employing unit any sworn or unsworn reports, with respect to persons employed by it, which they or any of them deem necessary for the effective administration of this act. Information thus obtained, or obtained from any individual pursuant to the administration of this act, shall, except to the extent necessary for the proper administration of this act, be held confidential and shall not be published or be opened to public inspection (other than to public employees in the performance of their public duties), in any manner revealing the individual's or employing unit's identity, but any claimant (or his legal representative) at a hearing before an Appeal Tribunal or the Board of Review shall be supplied with information from such records to the extent necessary for the proper presentation of his claim. Any employee or member of the Board of Review or any employee of the commission, who violates any provision of this section, shall be fined not less than twenty dollars ($20.00) nor more than two hundred dollars ($200.00), or imprisoned for not longer than ninety

(90) days, or both. The commission may make the state's records relating to the administration of this act available to the railroad retirement board, and may furnish the railroad retirement board, at the expense of such board, such copies thereof as the railroad retirement board deems necessary for its purposes. The commission may afford reasonable cooperation with every agency of the United States charged with the administration of any unemployment insurance law."

"§ 7412. Privileged communications. All letters, reports, communications, or any other matters, either oral or written, from the employer or employee to each other or to the commission or any of its agents, representatives or employees, which shall have been written, sent, delivered, or made in connection with the requirements and administration of this act, shall be absolutely privileged and shall not be made the subject matter or basis of any suit for slander or libel in any court of the State of Mississippi, unless the same be false in fact and maliciously written, sent, delivered, or made for the purpose of causing a denial or benefits under this act."

7. § 7440(g), Mississippi Code, 1942, Annotated, Recompiled.

8. § 7440(h), Mississippi Code, 1942, Annotated, Recompiled.

sary for the proper administration of the Act.

The Act also provides that such information shall not be published or opened to public inspection.

Exceptions are provided in the Act for the use of the records by public employees in the performance of their public duties, and in hearings before an Appeal Tribunal or Board of Review.

The Act provides that any employee or member of the Board of Review or any employee of the Commission, who violates any provision of § 11(g) (1) shall be subject to a fine and/or imprisonment for such violation.

Section 11(g) (1) further provides that the state's records relating to the administration of the Act may be made available to the railroad retirement board, and that the Commission may afford reasonable cooperation to every agency of the United States charged with the administration of any unemployment insurance law.

The movant and MESC contend that § 11(g) (1) of the Act creates an absolute privilege which prohibits Wooten, as an employee of the Commission, from revealing, by way of deposition, the information contained in the records under his control with reference to employment practices of Burris.

A careful reading of § 11(g) (1) of the Act leaves one with the impression that the thrust of the section is addressed to records and reports required to be made and kept by employers and to which the Commission has access, and not to records maintained by MESC when rendering a service to covered employers, such as in the case sub judice.

Section 11(g) (1) contains the provision, "Information thus obtained, or obtained from any individual pursuant to the administration of this act, shall, * * *, be held confidential and shall not be published or be opened to public inspection * * *".

Wooten claims this provision is all inclusive, and extends to all of the records of the Commission, regardless of source, and should the Court require him to give the deposition and disclose the records, he would be subjected to the penalties of the statute. Such an action, Wooten contends, would violate his Fifth Amendment rights.

In considering the issue presented by Wooten's Motion, the Court must take note of the nature of the case sub judice. The case is fashioned under Title VII of the Civil Rights Act of 1964, and concerns discrimination in employment on account of race and color. The rights sought to be vindicated by the suit are not individual, but public rights. Chief Judge, John R. Brown, said in a recent Fifth Circuit case.[9]

"* * * we have within the very recent months had to deal extensively with Title VII civil rights cases concerning discrimination in employment on account of race, color, sex and religion. Court decisions on critical standards are of unusual importance. This is so because, except for preliminary administrative efforts at conciliation and the rare pattern or practice suit by the United States, effectuation of Congressional policies is largely committed to the hands of individual workers who take on the mantle of a private attorney general to vindicate, not individual, but public rights."

If Wooten's position is sustained by the Court, employment records of employers kept in the offices of MESC throughout the state are beyond the reach of the

9. Ida Phillips v. Martin Marietta Corp., 5 Cir. 1969, 416 F.2d 1257. See also Jenkins v. United Gas Corp., 5 Cir. 1968, 400 F.2d 28; Oatis v. Crown Zellerback Corp., 5 Cir. 1968, 398 F.2d 496; Pettway v. American Cast Iron Pipe Co., 5 Cir. 1969, 411 F.2d 998.

discovery provided by the Federal Rules of Civil Procedure and are immune from production. Such a holding would provide a sanctuary for employers to defeat or frustrate the public rights generated by the Civil Rights Act of 1964. Wooten suggests as much, when, in his brief he says: "If the Courts should begin to require the production and disclosure of the information obtained by MESC voluntarily from employers in the administration of the public employment service, *particularly if this information is to be disclosed in civil rights proceedings against said employers,* employers would cease doing business with the State Employment Service and would discontinue giving to it the information required for administering the program". The Act requires employers to furnish the information necessary for the implementation of the program. We are considering, here, voluntary information supplied by Burris, and employment records made by MESC for Burris, at a time when MESC is rendering an employment service to Burris.

■ In construing statutes Courts are concerned with constructions which are applicable to all situations, not solely to a particular case.

If the Mississippi law grants an absolute privilege to the records of MESC, so that there can never be a case where their production can be required in a Court of Justice, a haven will be thereby created where all who may be guilty of violations of the Civil Rights Act of 1964 may flee and obtain safe refuge. This can be accomplished by the simple procedure of having MESC act as employment agents, and maintain all records in regard thereto.

In determining the issue submitted for the Court's decision, well known and accepted rules of law should be carefully analyzed.

A number of well accepted principles of law are set forth in 8 Wigmore, Evidence (McNaughton rev. 1961), which bear upon the issue.

"§ 2192. Duty to give testimony: General principle; Intimidation of witnesses. For more than three centuries it has now been recognized as a fundamental maxim that the public (in the words sanctioned by Lord Hardwicke) has a right to every man's evidence. When we come to examine the various claims of exemption, we start with the primary assumption that there is a general duty to give what testimony one is capable of giving and that any exemptions which may exist are distinctly exceptional, being so many derogrations from a positive general rule."

"(2) From the point of view of society's right to our testimony, it is to be remembered that the demand comes, not from any one person or set of persons, but from the *community* as a whole—from justice as an institution and from law and order as indispensable elements to civilized life. The dramatic features of the daily courtroom tend to obscure this."

"§ 2193. Duty to give testimony (continued): Applied to production of documents. This testimonial duty to attend and disclose all that is needed for the ascertainment of truth applies to every form and material of evidence whatever.

"In particular it applies to such evidential material as exists in a person's hands in the form of documents. 'There seems to be no difference in principle,' said a great judge, 'between compelling a witness to produce a document in his possession, under a subpoena duces tecum, in a case where the party calling the witness has a right to the use of such document, and compelling him to give testimony, when the facts lie in his own knowledge.' This much has long been unquestioned, for to give up facts possessed by phys-

ical control is no different from the giving up of data possessed as mental impressions."

"§ 2285. General principle of privileged communications. Looking back upon the principle of privilege, as an exception to the general liability of every person to give testimony upon all facts inquired of in a court of justice, and keeping in view that preponderance of extrinsic policy which alone can justify the recognition of any such exception (§§ 2192 and 2197 supra), four fundamental conditions are recognized as necessary to the establishment of a privilege against the disclosure of communications:

(1) The communications must originate in a confidence that they will not be disclosed.

(2) This element of confidentiality must be essential to the full and satisfactory maintenance of the relation between the parties.

(3) The relation must be one which in the opinion of the community ought to be sedulously fostered.

(4) The injury that would inure to the relation by the disclosure of the communications must be greater than the benefit thereby gained for the correct disposal of litigation.

Only if these four conditions are present should a privilege be recognized."

Section 11(g) (1) of the Act has never been subjected to a construction by the Mississippi Supreme Court. There is a scarcity of judicial interpretations of similar statutes in other states.

There appears an Annotation in 165 A.L.R. beginning at page 1302, which includes a discussion of the matter. The subject of the Annotation is "Forbidding Disclosure by Public Offices". At page 1327, under the subsection (g) entitled "Social Security, old age assistance, and unemployment information and data, the Annotation says:

"Some of the states have enacted statutes relating to disclosure or divulgence of information and records by public social security, old age assistance and unemployment boards, officers and employees. Although there are few cases dealing with the construction of such statutes, it has generally been concluded that the prohibition of disclosure in such statutes does not forbid the production of such records in response to court process."

Two cases are cited to sustain this position to-wit, Bell v. Bankers Life & Casualty Co., 1945, 327 Ill.App. 321, 64 N.E.2d 204; and State ex rel. Haughland v. Smythe, 25 Wash.2d 161, 169 P.2d 706, 165 A.L.R. 1295. In both cases the statute under consideration provided penalties for disclosure of the records, just as it is the case in the Mississippi statute.

In *Bell*, supra, the Court held that the prohibition of the statute was clearly intended to forbid voluntary disclosures by public employees of the welfare bureau, but was never intended to prevent the disclosure of official documents pursuant to the compulsion of a subpoena, where the contents of such documents were pertinent to a legal inquiry. The holding in *Haughland* was similar to the holding in *Bell*.

Marceau v. Orange Realty, Inc., 1952, 97 N.H. 497, 92 A.2d 656 concerned the right of the court to require the production of records by the New Hampshire Employment Security Commission, in response to a subpoena duces tecum served upon it. The provision of the New Hampshire statute relating to the privileged nature of the records of the Commission is similar to the Mississippi statute. In sustaining the right of the trial court to require production of the records by the Commission, the New Hampshire Supreme Court held that the statute

should be strictly construed; that before the production of the records should be denied it should plainly appear that the benefits of secrecy were thought to outweigh the need for the correct disposal of the litigation; that the production of the records and testimony concerning them, under the circumstances of the case, would not expose the witnesses to the penalties provided by the section; and that the statute did not furnish a privilege against production of departmental records for use in judicial proceedings, or against testimony relating to the records.

The Rhode Island Supreme Court considered the effect of a statute similar to the Mississippi statute granting privileged status to the records of the Rhode Island Department of Employment Security in the case of Powers ex rel. Department of Employment Security v. Superior Court, 1951, 79 R.I. 63, 82 A.2d 85. In upholding the right of the lower court to compel the production of the records the Rhode Island Supreme Court said:

"While there are cases to the contrary, as suggested by the petitioner here, there is also good authority to the effect that in a proper case the prohibition of disclosure in such statutes does not forbid the production of such records in response to court process. See 165 A.L.R. 1327."

■ The clear intent of Section 11 (g) (1) is to prohibit the public disclosure of information obtained by MESC from employing units throughout this state, collected and obtained for the purpose of administering the Act, and of information obtained from any individual pursuant to the administration of the Act.

It is not clear, however, that the legislature intended to grant a genuine or absolute privilege which would prohibit the production of records and disclosure of information reflected thereby, pursuant to the process of the Courts, where the records and information reflected thereby become necessary for the proper presentation of the rights of litigants.

■ Where the need for records and information reflected thereby outweighs the benefits afforded by the privilege, the Court should order the production of the records and require that information in regard thereto be given by the custodian, unless there is some overwhelming reason that such should not be done.

Wooten attempts to distinguish the case sub judice with Carr et al. v. Conoco Plastics, Inc., et al., 295 F.Supp. 1281, where this Court ordered MESC to disclose its records regardless of § 11(g) (1).

Wooten asserts that a different factual situation exists here. Wooten and MESC are parties defendant in Carr. Here Wooten is subpoenaed as a witness. It is argued that production of the records in Carr may be considered as necessary for the proper administration of the Act, since Wooten and MESC are called upon to defend their actions in that case. The Act provides an exception "to the extent necessary for the proper administration of this Act". Wooten argues that the reasoning of Carr should not apply in the case sub judice because of the different position which he occupies. Wooten misinterprets Carr. The main basis of the Court's decision in Carr applies with equal force in this case. The premise that § 11(g) (1) provides an exception which might be utilized by Wooten and MESC in Carr was given little consideration by the Court. There is some merit in Wooten's position but other factors in the case are more controlling.

The fundamental question to be solved is whether plaintiffs, appearing in this suit as private attorney generals, empowered to enforce public rights, may be frustrated in their attempt to vindicate those rights, by a state statute which is

said to create an absolute privilege against the production of records, which are material to their right of action.

Wooten urges upon the Court that the privilege extended by the statute is a genuine privilege, similar to one afforded the government in criminal and Fair Labor Standard Act cases, from divulging the names of informants.[10]

This argument is not persuasive. The distinction is clear between such cases and the case sub judice. The protection of information given MESC by employing units and others has no justification comparable to the protection against revealing the identity of informers afforded such government agencies. Especially is this true, where the privilege would create an opportunity for those who are inclined to violate the Civil Rights Act of 1964, to conceal pertinent information.

■ Wooten argues that an order of the Court directing him to produce MESC records in his possession and to testify by way of deposition as to the contents thereof, would require him to violate § 11(g) (1) and subject him to the penalties of the statute. Such procedure, he says would violate his Fifth Amendment rights. It is, of course, well recognized that a person may not be compelled to give evidence of any fact which might tend to incriminate him. The cases submitted in Wooten's brief sustain this position. In producing MESC's records and testifying as to the contents thereof, Wooten will not be divulging information or facts which tend to incriminate him. The Court is of the opinion that Wooten's Fifth Amendment rights are not involved, and that an order requiring him to produce the records and give evidence in regard thereto affords him complete protection.

■ A state statute cannot be used to frustrate the implementation of federally protected rights, such as is involved in the case sub judice.

In 1819, the Supreme Court of the United States held in the case of McCulloch v. The State of Maryland et al., 4 Wheat. 316, 4 L.Ed. 579, that "The government of the United States, then, though limited in its powers, is supreme; and its laws, when made in pursuance of the constitution, form the supreme law of the land 'anything in the constitution or laws of any state to the contrary notwithstanding' ".

This landmark decision has been followed by the courts since its rendition. It remains today as the law of the land. The theory of the supremacy of federally protected rights has been applied in many fields of the law. The Fifth Circuit has applied this rule in a number of school desegregation cases. The Court said in United States v. Board of Education of City of Bessemer, 5 Cir., 1968, 396 F.2d 44, 51 "We are emphatic that the school board could not use local tenure or teacher hiring—security statutes as a justification for failing to initiate and maintain desegregation of facilities" and, in United States v. Greenwood Municipal Separate School District, 5 Cir. 1969, 406 F.2d 1086, 1094, the court held "The school board protests that it is powerless to do what we ask because of state laws * * *. Of course, one answer to the argument that state laws prevent the board from taking the necessary affirmative steps is that local hiring statutes may not be interposed to frustrate a constitutional mandate".

---

10. Wooten cites such cases as:

Wirtz v. Continental Finance & Loan Co., 5 Cir. 1964, 326 F.2d 561, which holds that the Secretary of Labor should not be required to divulge the names of persons filing complaints in the case.

Wirtz v. McDade, 5 Cir. 1964, 330 F.2d 610, where the Court refused to require the Secretary of Labor to produce pretrial discovery statements taken by his representatives.

Mitchell v. Roma, 3 Cir. 1959, 265 F. 2d 633, wherein the Court refused to require disclosure of the names of informers in a suit charging violations of the Fair Labor Standard Act.

The rule that state laws may not be used to frustrate federally protected rights is as effective in the area of racial discriminatory employment practices as in the area of school desegregation.

The Court has heretofore entered an order denying plaintiffs the right to access to correspondence between Burris and the Equal Employment Opportunity Commission (EEOC) relating to employment at Burris' plant and exchanged in the investigation and conciliation procedure undertaken by EEOC of the complaints filed by plaintiffs. 42 U.S.C. § 2000e-5, provides that nothing said or done during and as a part of the investigation or conciliation endeavors of EEOC may be made public by EEOC without the written consent of the parties, or used as evidence in the subsequent proceeding.

The Court held that this provision of the Civil Rights Act of 1964 served a useful purpose and encouraged employers to enter into conciliation proceedings with EEOC. The Court recognized the confidential and privileged nature of such correspondence, and granted Burris the benefit of its provisions.

Wooten argues that the public policy which prompted the Court to recognize the privileged nature of conciliation correspondence between EEOC and Burris should furnish the basis for recognizing the privileged nature of the records of MESC. In discussing public policy Wooten contends that should the records of MESC be made available to plaintiffs in the case sub judice, employers will lose confidence in the program and withdraw their support. It is, of course, desirable for those who deal with MESC to know that records and information furnished MESC in connection with its program will not be published and will be considered as privileged. This, no doubt, commands increased participation by employers in the program of MESC.

■ The Court is faced with the problem of determining whether the benefits to be derived from recognizing and enforcing the privilege afforded by the statute outweigh the need of plaintiffs for the privileged records to be used as evidence in their action against Burris.

After mature consideration of all the circumstances involved in the case, the Court is of the opinion that the Motion should be overruled, that the records involved should be produced, and that the witness Wooten should be required to give his deposition.

An appropriate order will be entered, with such restrictions as to the use of the records as the Court deems proper.