**Coda M. FEARS et al., Plaintiffs-Appellees,**

v.

**BURRIS MANUFACTURING COM-PANY, Defendant,**

**Marvin Wooten, Manager of the Aberdeen Office of Mississippi Employment Security Commission, Appellant.**

**No. 28983**

**Summary Calendar.***

United States Court of Appeals, Fifth Circuit.

Jan. 20, 1971.

---

* Rule 18, 5th Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir. 1970, 431 F.2d 409.

H. L. Hutcherson, Gen. Counsel, Mississippi Employment Security Comm., Walter R. Bivins, Atty., Jackson, Miss., for appellant.

Frank R. Parker, Lawyers' Committee for Civil Rights Under Law, Jackson, Miss., for plaintiffs-appellees.

Thomas C. Bradley, Jr., Spartanburg, S. C., Fred Bush, Mitchell, McNutt & Bush, Tupelo, Miss., for other interested parties.

Before WISDOM, COLEMAN, and SIMPSON, Circuit Judges.

WISDOM, Circuit Judge:

This is an appeal from an order of the Honorable Orma R. Smith, District Judge for the Northern District of Mississippi, denying the motion of Marvin Wooten to quash a subpoena duces tecum with which he had been served. Fears v. Burris Mfg. Co., 1969, 48 F.R. D. 91. The appeal turns on the extent to which the principles expressed in Carr v. Monroe Mfg. Co., 5 Cir. 1970, 431 F.2d 384,[1] should be regarded as applicable to the facts here presented. We regard *Carr* as controlling in this case and therefore affirm the district court's order.

## I.

The plaintiffs, a group of Negro women, filed this class action against the Burris Manufacturing Company of Aberdeen, Mississippi, seeking injunctive relief from alleged discriminatory employment practices on the part of Burris prohibited by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. The amended complaint charges that when the plaintiffs went to the Burris plant to apply for jobs, they were told that they would have to fill out applications for employment at the Burris

plant at Aberdeen office of the Mississippi Employment Security Commission (MESC). At the MESC office, however, officials of that office told the plaintiffs that there were no jobs available at the Burris plant and would not permit the plaintiffs to fill out applications for jobs at Burris. Instead, the MESC officials offered them other employment. The plaintiffs alleged that during the same period officials at the MESC office permitted white women to fill out applications for employment at Burris and that Burris had indeed hired numerous white employees. By refusing to permit them to fill out applications and refusing to employ them solely because they are Negroes, the plaintiffs charged, Burris "has committed and continues to commit" unlawful employment practices in violation of the Civil Rights Act of 1964.

Through discovery procedures the plaintiffs learned that since 1966 Burris has employed all its plant workers through the Aberdeen office of the MESC. According to Burris, when a vacancy occurs, Burris places a job order with MESC to fill that vacancy, and all applicants for the job are screened by MESC before they are referred to Burris. If a prospective employee comes to the Burris plant looking for a job, Burris's procedure is to send that person to MESC before considering him for employment. The prospective employee must fill out an employment application at the MESC office and pass the MESC screening procedures before being referred to Burris. Once applicants are referred from the MESC office, they must fill out a Burris application and be interviewed before they are hired. It is Burris's position that they know very little about the procedures used by MESC to screen applicants for employment at the Burris plant. Burris officials assume that MESC administers some kind of aptitude test, but the results of such tests are not reported to Burris. Further, Burris officials do not

---

[1]. The Supreme Court has recently denied a petition for writ of certiorari. Aldridge v. Carr, 1971, 400 U.S. 1000, 91 S.Ct. 456, 27 L.Ed.2d 451.

see the application forms filled out at the MESC office, and they maintain no records of their own concerning employment applications or job orders placed with MESC.

At that stage of the proceedings, it became clear to the plaintiffs that the MESC records would be essential to the successful prosecution of their case against Burris. Therefore they filed a notice under Rule 30, F.R.Civ.P., that they wished to take the deposition of Marvin Wooten, Manager of the Aberdeen Office of MESC. Later, Wooten was served with a subpoena duces tecum ordering him to appear at a hearing and produce certain MESC records. Wooten, however, filed a motion to quash the subpoena duces tecum. After a hearing on the motion, the district court entered an order denying the motion to quash the subpoena. *See* Fears v. Burris Mfg. Co., N.D.Miss.1969, 48 F.R.D. 91. This appeal followed.

## II.

There is a marked similarity between this case and Carr v. Monroe Mfg. Co., 5 Cir. 1970, 431 F.2d 384. In *Carr*, a group of Negro plaintiffs brought a class action against Monroe Manufacturing Company and John E. Aldridge and Marvin Wooten, officers of MESC. Their complaint charged Monroe with racial discrimination in employment and Aldridge and Wooten with racial discrimination in handling job applications and job referrals, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. As in the instant case, a dispute soon arose as to whether the MESC records were privileged and confidential. After a hearing,

the district court ordered Aldridge and Wooten, the MESC officers, to produce the records. Although the court entered various protective orders, he declined to permit the MESC officers to block out on work application cards the names and addresses of applicants for employment and of employers not parties to the suit. Aldridge and Wooten appealed from the denial of their latter motion, and this Court affirmed the district court's decision not to so limit his discovery order.

Wooten attempts to distinguish *Carr*. He contends that *Carr* concerned only the narrow issue whether he would be permitted to block out the names and addresses of nonparty applicants and employers on the application cards that the district court had ordered him to produce. This case, he argues, concerns the question whether the district court can validly require him to produce those records at all. Moreover, *Carr* concerned a discovery order directed to one who was a defendant in the case; this case, on the other hand, concerns an order directed to an MESC officer who is not a party to the suit. We recognize that there are indeed some differences between the two cases, but we cannot agree that because of these differences the principles announced in *Carr* are irrelevant to this case. On the contrary, in reaching our decision in *Carr* this Court had to consider many of the arguments that Wooten presents in the brief he has filed in this case. With that preface then, we turn to the substance of Wooten's arguments on appeal.

## III.

First,[2] Wooten argues that § 11(g) (1) of the Mississippi Employ-

---

2. The plaintiffs have filed a motion to dismiss this appeal on the ground that the district court's order is neither a final judgment, appealable under 28 U. S.C. § 1291, or an interlocutory order granting an injunction, appealable under 28 U.S.C. § 1292(a). By order of this Court, the motion was carried with the case, to await the decision of the Court in *Carr*.

The *Carr* case has established that an order of the district court denying the motion of a state officer to quash a subpoena duces tecum when that officer asserts a governmental privilege is appealable as a final order. *See* 431 F.2d at 386–387. Accordingly, the plaintiffs' motion to dismiss the instant appeal is hereby denied.

ment Security Law [3] creates an absolute privilege that prohibits him as an MESC employee from disclosing, even in a judicial proceeding, the information contained in the MESC records. Although there are no decisions of the Mississippi state courts authoritatively construing the statute, the plaintiffs cite numerous decisions of other jurisdictions holding that such a statute does not grant an absolute privilege against disclosure in a judicial proceeding but merely forbids the voluntary disclosure of the contents of those records to the general public. *See, e. g.,* Marceau v. Orange Realty, Inc., 1952, 97 N.H. 497, 92 A.2d 656; Powers ex rel. Department of Employment Security v. Superior Court, 1951, 79 R.I. 63, 82 A.2d 885; State ex rel. Haugland v. Smythe, 1946, 25 Wash.2d 161, 169 P.2d 706. These same arguments were presented to this Court in *Carr.* There Judge Godbold, for the Court, declined to speculate how the Mississippi courts would construe the statute. Such a determination, he wrote, was unnecessary to a decision in the case, for the reason that

[t]he Mississippi statute, however construed, does not grant an absolute privilege from disclosure of MESC records in this case. We have recently reviewed the relevant authorities in Garner v. Wolfinbarger [5 Cir. 1970, 430 F.2d 1093]. We there concluded that in any given instance the special federal interest in seeking the truth in a federal question case may require disclosure despite the existence of a state rule holding the same communications privileged. We reaffirm that result here.

431 F.2d at 388. Similarly, we reaffirm our decision in *Carr* and hold that § 11(g)(1) does not create an absolute privilege that in all cases forbids the disclosure in a federal proceeding of the contents of the MESC employment records.

## IV.

■ Second, Wooten argues that the order of the district court requiring him to disclose the contents of the MESC records violates his Fifth Amendment privilege against self-incrimination, in-

3. Code of Mississippi, 1942, Title 26, § 7411:

Each employing unit shall keep true and accurate work records, containing such information as the commission may prescribe. Such records shall be open to inspection and be subject to being copied by the commission or its authorized representatives at any reasonable time and as often as may be necessary. The commission, Board of Review, and any referee may require from any employing unit any sworn or unsworn reports, with respect to persons employed by it, which they or any of them deem necessary for the effective administration of this act. Information thus obtained, or obtained from any individual pursuant to the administration of this act, shall, except to the extent necessary for the proper administration of this act, be held confidential and shall not be published or be opened to public inspection (other than to public employees in the performance of their public duties), in any manner revealing the individual's or employing unit's identity, but any claimant (or his legal representative)

at a hearing before an Appeal Tribunal or the Board of Review shall be supplied with information from such records to the extent necessary for the proper presentation of his claim. Any employee or member of the Board of Review or any employee of the commission, who violates any provision of this section, shall be fined not less than twenty dollars ($20.00), nor more than two hundred dollars ($200.00), or imprisoned for not longer than ninety (90) days, or both.

*See also* Code of Mississippi, 1942, Title 26, § 7412:

All letters, reports, communications, or any other matters, either oral or written, from the employer or employee to each other or to the commission or any of its agents, representatives or employees, which shall have been written, sent, delivered, or made in connection with the requirements and administration of this act, shall be absolutely privileged and shall not be made the subject matter or basis of any suit for slander or libel in any court of the State of Mississippi * * *.

asmuch as § 11(g) (1) provides penalties for the unlawful disclosure of that information. Furthermore, he contends, the order of the district court does not afford him the absolute protection from prosecution necessary before he may be compelled to give evidence that may incriminate him. The plaintiffs, on the other hand, argue, consistent with their interpretation of the statute, that disclosure of the MESC records in a federal proceeding would not be unlawful and therefore that Wooten could not be penalized for producing the records. In his brief filed in the *Carr* case, Wooten made much the same contention. Apparently the Court did not consider the point of sufficient merit to discuss it in the text of the opinion. We may assume, however, that since the Court affirmed the order of the district court, it considered Wooten's constitutional claim and rejected it.

We must do likewise. The Fifth Amendment declares that a person "shall not be compelled in any criminal case to be a witness against himself." That language of course means more than that a person may not be compelled to incriminate himself by testifying in a criminal prosecution against him. It also means that "a person should not be compelled, when acting as a witness in any investigation, to give testimony which might tend to show that he himself had committed a crime." Counselman v. Hitchcock, 1892, 142 U.S. 547, 562, 12 S.Ct. 195, 198, 35 L.Ed. 1110. It is clear, however, that the district court's order in this case does not require the production of any records or information that would tend to show that Wooten had committed a crime. Of course Wooten's argument is not that he is being compelled to give testimony the contents of which will tend to incriminate him but rather that the act of disclosure itself may subject him to criminal penalties. Putting aside the question whether under a proper construction of the statute Wooten may be subject to penalty for disclosing the MESC records in a federal proceeding, we agree with the district court that in these circumstances "Wooten's Fifth Amendment rights are not involved." *See* Fears v. Burris Mfg. Co., N.D.Miss. 1969, 48 F.R.D. 91, 99.

In any event, it appears to us, as it did to Judge Smith, that the order of the district court requiring Wooten to produce the records and give evidence "affords him complete protection" from any criminal penalties. We have no reason to think that the Mississippi courts would allow state laws to be used to frustrate federally protected rights implemented by a federal court order. Of course, in limited circumstances the federal courts may enjoin state criminal proceedings in aid of their jurisdiction or to protect or effectuate their judgments. *See* 28 U.S.C. § 2283.

## V.

As a final note, we wish to emphasize what we said in *Carr* concerning the availability of a state governmental privilege in a federal proceeding. In each case in which a state official asserts a privilege not existent in the common law but enacted by the legislature based on unique considerations of government policy, the federal trial judge has the duty to make an independent examination of the appropriateness of the privilege by balancing the policies behind the privilege against the policies favoring disclosure. After the trial judge has weighed these policies and struck a balance, this Court will not reverse in the absence of a clear showing of abuse of discretion. *See* 431 F.2d at 388–389. We hold that Judge Smith— who did not have the benefit of guidance from our decision in *Carr*—committed no abuse of discretion in ordering the production of the MESC records. Indeed, we agree entirely with his choice and with the reasons so well expressed in his memorandum opinion. *See* Fears v. Burris Mfg. Co., N.D.Miss.1969, 48 F.R.D. 91.

Affirmed.