**MARINE WELDING & REPAIR WORKS, INC., Williamson Engine & Supply, Inc., Greenville Manufacturing & Machine Works, Inc., Greenville Propeller Works, Inc., Petitioners-Cross Respondents,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent-Cross Petitioner.**

No. 73–2218.

United States Court of Appeals, Fifth Circuit.

April 12, 1974.

William W. Cody, Alan I. Berger, St. Louis, Mo., for petitioners-cross respondents.

Elliott Moore, Deputy Assoc. Gen. Counsel, N.L.R.B., Washington, D. C.,

John J. A. Reynolds, Jr., Director N.L. R.B., Region 26, Memphis, Tenn., John Depenbrock, Atty., N.L.R.B., Washington, D. C., for respondent-cross petitioner.

Before COLEMAN, CLARK and GEE, Circuit Judges.

COLEMAN, Circuit Judge:

The prologue to the proceedings here under review is to be found in Marine Welding and Repair Works v. National Labor Relations Board, 8 Cir., 1971, 439 F.2d 395. There, the United States Court of Appeals enforced a Board finding that Marine Welding and Repair Works, Inc. and its associated Companies had violated Section 8(a)(3) of the Act by discharging Isiah Layton and Freddie Lee Walker.

That Court said:

"In sum, on this record, we observe conduct by an employer which violated the Act to a degree where we can say with certainty that the employees' rights to engage in concerted organizational activity were interfered with and restrained to a point of almost total obliteration", 439 F.2d at 398.

This precipitated backpay proceedings pursuant to Section 10(c) of the National Labor Relations Act, 29 U.S.C. § 151 et seq. The Board's Supplemental Decision and Order is reported, 202 NLRB No. 85. Marine Welding and Repair Works, Inc. petitions for review and the Board cross petitions for enforcement. The Order requires the Company to pay Layton $3,456 and Walker $10,312, with interest, for the periods elapsing between the time they were discharged and the subsequent offer of reemployment.

We enforce the order as to Isiah Layton, but deny enforcement as to Freddie Lee Walker, with remand for further proceedings consistent herewith.

The Company raises numerous objections to computations by which the Board arrived at the amount of the back pay awards: claiming in some instances that there was no evidentiary support for certain items; in others, that there were mathematically incorrect computations; and in yet others, that the Board failed to give the Company credit for sums clearly established by the evidence. While these items have been ably and vigorously contested at all stages of the proceedings, our review of the record and briefs constrains us to hold that, except as hereinafter set forth, these matters fall within the statutory and credibility discretion conferred on the Board. That the Company was improperly denied the right to adduce certain evidence which might have affected the result is the sole point necessitating further analysis.

The principles governing the determination of the amount of a back pay award are well settled. At the outset, the Board has the burden only to show the gross back pay due the claimant[1] J. H. Rutter-Rex Manufacturing Company, Inc. v. N. L. R. B., 5 Cir., 1973, 473 F.2d 223, cert. denied 414 U.S. 822, 94 S.Ct. 120, 38 L.Ed.2d 55 (1973). The burden then shifts to the employer to establish affirmative defenses in mitigation of his liability. Mitigation usually assumes any or all of three forms: (1) the unavailability of employment where not caused by discriminatory factors, (2) wilful loss of earnings, and (3) interim earnings which are due to be deducted from the award, N. L. R. B. v. Mooney Aircraft, Inc., 5 Cir., 1966, 366 F.2d 809; N. L. R. B. v. Miami Coca Cola Bottling, 5 Cir., 1966, 360 F. 2d 569; N. L. R. B. v. Brown and Root, Inc., 8 Cir., 1963, 311 F.2d 447.

The ultimate issue then becomes, what would not have been taken from the employees if the Company had not

---

1. As a matter of practice, Board General Counsel, under Board Rules and Regulations, Series 8 (29 C.F.R., § 102.53), includes in the backpay specifications a deduction of those amounts earned from other than the offending employer as revealed by personal interviews and social security records.

contravened the Act, Virginia Electric and Power Company v. N. L. R. B., 319 U.S. 533, 63 S.Ct. 1214, 87 L.Ed. 1568 (1943).

As already indicated, the Company defense in this case was built around all three of these grounds. The major contention is that it was denied a fair hearing because its efforts to subpoena records of the Mississippi Employment Service were defeated by the withdrawal of the subpoena.

At the request of the Company, the Board on March 13, 1972, issued the following subpoena duces tecum (omitting the formal opening and close):

"To Mr. Clarence Morris, Manager, Employment Service, Mississippi Employment Service, 121 S. Harvey Street, Greenville, Mississippi 38701

"YOU ARE HEREBY REQUIRED AND DIRECTED TO APPEAR BEFORE a Trial Examiner of the National Labor Relations Board, at a hearing to be held at Courtroom, Washington County Courthouse in the City of Greenville, Mississippi, on the 15th day of March, 1972, at 9:30 o'clock A.M., of that day, to testify in the Matter of Marine Welding and Repair Works, Inc., et al., Cases Nos. 26–CA–2736, et al.

"And you are hereby required to bring with you and produce at said time and place the following books, records, correspondence and documents:

"A. All records, files, reports, correspondence on the following:

a) Freddie Lee Walker
Social Security No.
427–60–0961

b) Isiah Layton
Social Security No.
425–34–9577

and for the period of time from May 5, 1967, through August 13, 1971, *showing the dates each appeared and registered for employment referral during said period of time.* [Italics added by this Court]

"B. All records, reports, schedules, summaries, statistics and/or files for the periods of time between May 5, 1967, and August 13, 1971, showing the positions of employment for which each of the above named persons would have been considered. The number of such positions available, the date the positions were available, the location and the approximate wage of said positions, during the periods of time from May 5, 1967, and August 13, 1971.

"C. All records, reports, schedules, summaries and statistics showing, for the type of work indicated below, the number of openings, their location, the approximate rate of pay, and the date said opening became available, during the period of time from May 5, 1967, and ending August 13, 1971; said positions are:

1. Truck driver
2. Laborer
3. Welder's helper
4. Pipe fitters helpers
5. Painter—and helper
6. Barge cleaner
7. Mechanic—diesel and engine
8. Mechanic's helper."

In response to the subpoena, the Mississippi Employment Security Commission presented its claim of privilege, asserting that "Said records and information are required by Section 7411, Mississippi Code of 1942, to be held confidential and shall not be published or opened to public inspection except to the extent necessary for the proper administration of the Mississippi Employment Security Law".

The law judge granted the claim of privilege and revoked the subpoena. The Board denied the Company's special appeal, and Board General Counsel refused to seek enforcement of the subpoena in the United States District Court.

Section 7411 of the Mississippi Code of 1942 reads as follows:

"§ 7411. Records and reports.

"Each employing unit shall keep true and accurate work records, containing such information as the commission may prescribe. Such records shall be open to inspection and be subject to being copied by the commission or its authorized representatives at any reasonable time and as often as may be necessary. The commission, board of review, and any referee may require from any employing unit any sworn or unsworn reports, with respect to persons employed by it, which they or any of them deem necessary for the effective administration of this act. Information thus obtained, or obtained from any individual pursuant to the administration of this act, shall, except to the extent necessary for the proper administration of this act, be held confidential and shall not be published or be opened to public inspection (other than to public employees in the performance of their public duties), in any manner revealing the individual's or employing unit's identity, but any claimant (or his legal representative) at a hearing before an appeal tribunal or the board of review shall be supplied with information from such records to the extent necessary for the proper presentation of his claim. Any employee or member of the board of review or any employee of the commission, who violates any provisions of this section, shall be fined not less than twenty dollars ($20.00), nor more than two hundred dollars ($200.00), or imprisoned for not longer than ninety (90) days, or both. The commission may make the state's records relating to the administration of this act available to the railroad retirement board, and may furnish the railroad retirement board, at the expense of such board, such copies thereof as the railroad retirement board deems necessary for its purposes. The commission may afford reasonable cooperation with every agency of the United States charged with the administration of any unemployment insurance law."

■ So far as we can ascertain, the Mississippi Supreme Court has never had occasion to construe the nature or scope of the confidentiality conferred by Section 7411.[2] The Code Section mentions only the records kept by an *employing unit* when those records are furnished the Commission under the terms of the statute. That is not the type of record at issue in this appeal. Nevertheless, we need decide the "confidentiality" issue only to the extent that it is involved in this appeal and we go no further than that. Suffice it to say, we do not regard the statute as creating the privileged status recognized and accorded by the Administrative Law Judge. To say the least, the statute only confers a confidentiality which bans publication or opening of records "to public inspection". The subpoena-compelled availability of such records in defense of a claim made for a beneficiary of the Act is not expressly covered and should not be implied to bar access to facts relevant to the issue raised by the back pay claim, see United States v. Woodall, 5 Cir., en banc, 1970, 438 F.2d 1317, 1324–1326.

In its appearance here, however, the Board does not depend on Section 7411 as its sole and only shield.

---

2. In Carr v. Monroe Manufacturing Company, 431 F.2d 384, cert. den., 400 U.S. 1000, 91 S.Ct. 456, 27 L.Ed.2d 451 (1971), this Court held in a case of alleged racial discrimination in assignments and employment that Section 7411 does not confer an *absolute privilege*. See, also, Fears v. Burris Manufacturing Company, D.C., 48 F.R.D. 91 (1969). Both these cases centered on employer records.

While Section 7412 of the Mississippi Code of 1942 was not asserted in the claim of privilege, we notice its existence and express the view that it deals only with privilege in the case of communications which might afford a basis for libel or slander.

It takes refuge behind the proposition that the Board has the power to issue and revoke subpoenas, that this power has been delegated in the first instance to the administrative law judge, and the Board has established standards to govern his actions. This, of course, must be conceded, but it can hardly be argued that ·this is an unbridled power which may be used to deprive an employer or an employee of his right to the benefit of evidence relevant and material to his case, especially so, where, as here, the subpoena was first issued without question and thereafter withdrawn in the face of a mistaken claim of privilege.

It is next argued that the production of the required documents was unnecessary and largely irrelevant to the Company's case. As will later be demonstrated, we can hardly accept this argument.

The concluding argument of the Board is as follows (Brief, 23):

"Similarly, that portion of the subpoena requesting documents concerning the discriminatees' record of registration with M.E.S.C. is unnecessary to the Company's defense. For the discriminatees were fully examined by Company counsel in this regard, which testimony was heard and observed by the Administrative Law Judge; the discriminatees produced M.E.S.C. cards corroborating their testimony that they had registered with M.E.S.C. (A. 107–108, 144–146); and the fact that the M.E.S.C. records might reveal that the discriminatees registered with more or less frequency than their testimony and evidence indicated, would not detract from the substantial record evidence of their extensive efforts to secure interim employment, *supra*, pp. 7–8, 10–12. Accordingly, the Board properly weighed these factors and determined that on balance, the M.E.S.C. claim of privilege should be honored. And since the Board's action clearly did not substantially prejudice the Company it is not cause to overturn the Board's decision. Morgan Precision Parts v. N.L.R.B., 444 F.2d 1210, 1214 (C.A.5, 1971); N.L.R.B. v. Safeway [Safway] Steel Scaffolds, 383 F.2d 273, 276–277 (C.A.5, 1967), cert. den., 390 U.S. 955 [88 S.Ct. 1052, 19 L.Ed. 2d 1150]; N.L.R.B. v. Miami Coca-Cola Bottling Co., 403 F.2d 994, 996–997 (C.A.5, 1968)."

### Isiah Layton

An examination of the record shows that between September, 1967 and August, 1971, Layton was steadily employed, although not every day or every week. In two quarters he earned more in his substitute employment than he would have made had he continued with Marine Welding. In other quarters he fell short of those earnings by such sums, respectively, as $20, $15, $51, $59, $95, and $53. The worst deficiency occurred in the first quarter of 1969, when he earned only $213.64. In the light of this consistent record, we agree with the Board that lack of records as to Layton's visits to and referrals by the Mississippi Employment Service could not have prejudiced the Company, i. e. their presence, in whatever quantity, pro or con, could not have substantially affected the fact that Layton worked away during these four years, nearly all of it with one employer, a railway company, which obviously found his work to be satisfactory from the first quarter of 1968 to the third quarter of 1971.

The backpay award to Layton is accordingly enforced.

### Freddie Lee Walker

Walker's case presents an entirely different picture. In the beginning, after Walker's discharge by Marine Welding, he "set the woods afire". For the first three quarters he practically doubled the earnings he would have received from his former employer. For the subsequent quarters his earnings took a nose dive, unexplained by any protracted illness or other disability.

**532**

Running chronologically from the first quarter of 1968, his earnings were as follows:

| Quarter | Earnings |
|---|---|
| 1 | $ 750.20 |
| 2 | 975.76 |
| 3 | 1,049.12 |
| 4 | 0 |
| 5 | 776.62 |
| 6 | 1,532.59 |
| 7 | 89.00 |
| 8 | 25.00 |
| 9 | 25.00 |
| 10 | 25.00 |
| 11 | 977.84 |
| 12 | 1,492.09 |
| 13 | 25.00 |
| 14 | 395.01 |
| 15 | 692.85 |

In this state of the record, the employer was entitled to show, at least for quarters 4, 7, 8, 9, 10, 13 and 14 what the records of the Employment Service showed as to Walker's visits, or lack of visits, in search of a referral for work. This would go to the very heart of his diligence, or lack of it, in seeking employment. The number of referrals given him would also be highly pertinent.

We accordingly hold that the Employment Service should have been required to produce these records and the administrative law judge should have considered them for whatever light they might have reflected on the genuineness of Walker's efforts to obtain employment.

■ A closing comment is in order. While the Employment Service did not challenge the subpoena on those grounds (preferring to stand on privilege), parts B and C of the subpoena were, on their face, unreasonable and oppressive. The Employment Service may not have its work disrupted and its fundamental function frustrated by being required every time a backpay hearing comes up to search for, collect, and produce a van load of records of the type demanded in parts B and C.

As to the employee, Isiah Layton, the backpay order is enforced.

As to the employee, Freddie Lee Walker, enforcement is denied, without prejudice, and his backpay award is remanded to the Board for further proceedings not inconsistent herewith.

CLARK, Circuit Judge (concurring):

I concur in the result reached by the majority opinion. However, I read Section 7411 as conferring confidentiality to "[i]nformation . . . obtained from an individual pursuant to the administration of this act" as well as to information obtained from an employing unit. Thus, as I construe it, the reach of the statute would extend to the records sought here. For the reasons set out by Judge Coleman, this enactment does not create the privileged status recognized and accorded by the Administrative Law Judge.