[No. 54407-7. En Banc. June 2, 1988.]

THE STATE OF WASHINGTON, *Respondent,* v. ERIC YALE MAXON, *Defendant,* DAVID MAXON, ET AL, *Appellants.*

*Michael E. De Grasse,* for appellants.

*Donald W. Schacht, Prosecuting Attorney,* and *James L. Nagle, Deputy,* for respondent.

ANDERSEN, J.—

## FACTS OF CASE

At issue in this case is whether this court should judicially adopt a parent–child privilege for confidential communications.

The appellants, David and Irene Maxon, are the parents of the adult defendant, Eric Maxon. Eric is charged with first degree murder in Walla Walla County. On May 18 and May 19, 1987, the defendant made statements about the case to his parents. They were made at the parents' home and also may have been made to the defendant's father at the police station. The trial court found that the statements were intended to be confidential. On May 21, the prosecuting attorney took the parents' depositions. The parents refused to answer questions concerning what the defendant had said to them. They claimed that his statements were privileged based on constitutional, public policy and other grounds.

The trial court found the parents' refusal to answer the questions was without substantial justification and granted

the State's motion for an order compelling answers to questions on deposition. The parents moved this court for direct discretionary review of the trial court's order. Finding no probable error, the motion was denied on June 24, 1987.

After continued refusal by the parents to answer deposition questions, the trial court held the parents in civil contempt and ordered their confinement in jail until they obeyed the order. The trial court denied the parents' motion to vacate the confinement order but deferred their arrest to enable them to seek a stay from this court. The trial court's order was stayed by this court pending further order. Finding the dispute now ripe for review by appeal, this court decided to retain the case for decision.

The defendant's trial was scheduled to begin on January 19, 1988. On January 13, 1988, following an en banc hearing before the full court, we issued our order vacating the stay of the superior court's confinement order on the ground that there is no parent–child privilege for confidential communications in this state.[1] We here explain our decision in that order.

A single issue is presented.

## ISSUE

Should this court recognize a parent–child testimonial privilege for confidential communications based on the constitutional right to privacy, the common law or public policy grounds?

## DECISION

CONCLUSION. The federal and state constitutions afford no basis for a parent–child privilege, and neither does the weight of common law. As we perceive it, public policy also disfavors creation of such a privilege by judicial fiat.

---

[1] Our Order dated January 13, 1988 provided in pertinent part as follows:

"It Is Now Hereby Ordered That the Superior Court's orders are affirmed, and the stay of enforcement of those orders is vacated.

"The court's opinion explaining this decision will be issued in due course."

"'[T]he twofold aim [of criminal justice] is that guilt shall not escape or innocence suffer.'"[2] This aim would be defeated if judgments were to be based on a partial or speculative presentation of the facts.[3] Indeed, as the United States Supreme Court has stated,

> The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence.

*United States v. Nixon,* 418 U.S. 683, 709, 41 L. Ed. 2d 1039, 94 S. Ct. 3090 (1974). Thus has developed the ancient proposition of law "'that "the public . . . has a right to every man's evidence," except for those persons protected by a constitutional, common–law, or statutory privilege . . .'".[4] Such privileges are exceptions to the general principle that the government is entitled to all relevant evidence in criminal cases.[5] Privileges are recognized when certain classes of relationships, or certain classes of communications within those relationships, are deemed to be so important to society that they must be protected, even at the expense of the fact–finding process in criminal investigations and prosecutions.[6] Under Washington law, communications made between husband and wife, priest and penitent, lawyer and client and doctor and patient are

[2]*United States v. Nixon,* 418 U.S. 683, 709, 41 L. Ed. 2d 1039, 94 S. Ct. 3090 (1974), quoting *Berger v. United States,* 295 U.S. 78, 88, 79 L. Ed. 1314, 55 S. Ct. 629 (1935).

[3]*Nixon,* at 709.

[4]*Nixon,* at 709, quoting *Branzburg v. Hayes,* 408 U.S. 665, 688, 33 L. Ed. 2d 626, 92 S. Ct. 2646 (1972).

[5]*See Trammel v. United States,* 445 U.S. 40, 50, 63 L. Ed. 2d 186, 100 S. Ct. 906 (1980).

[6]Note, *Parent–Child Loyalty and Testimonial Privilege,* 100 Harv. L. Rev. 910, 911 (1987).

privileged and need not be disclosed in most judicial proceedings.[7]

The parents in this case seek to have such protection extended to yet another relationship—that of parent and child. While this issue is one of first impression in this state, it has received considerable attention from courts and legislatures across the country over the past decade. The majority of state courts that have considered the issue have declined to recognize a parent–child privilege.[8] Likewise, most federal courts which have considered the issue have refused to recognize a parent–child privilege.[9]

Thus far only one federal court, a trial court, has recognized a parent–child privilege.[10] Similarly, only New York has judicially adopted such a privilege.[11] The legislatures of three states have enacted statutes granting limited parent–child privileges.[12] There appears, however, to be considerable support for such a privilege among legal commentators.[13]

---

[7] *See* RCW 5.60.060.

[8] *See, e.g., In re Terry W.,* 59 Cal. App. 3d 745, 130 Cal. Rptr. 913 (1976); *State v. Gilroy,* 313 N.W.2d 513 (Iowa 1981); *Three Juveniles v. Commonwealth,* 390 Mass. 357, 455 N.E.2d 1203 (1983), *cert. denied,* 465 U.S. 1068, 79 L. Ed. 2d 746, 104 S. Ct. 1421 (1984); *People v. Dixon,* 161 Mich. App. 388, 411 N.W.2d 760 (1987); *State v. Bruce,* 655 S.W.2d 66 (Mo. Ct. App. 1983); *In re Gail D.,* 217 N.J. Super. 226, 525 A.2d 337 (1987).

[9] *See, e.g., United States v. Jones,* 683 F.2d 817 (4th Cir. 1982); *Port v. Heard,* 764 F.2d 423 (5th Cir. 1985); *United States v. Ismail,* 756 F.2d 1253 (6th Cir. 1985); *United States v. Davies,* 768 F.2d 893 (7th Cir.), *cert. denied,* 474 U.S. 1008 (1985); *United States v. Penn,* 647 F.2d 876 (9th Cir.), *cert. denied,* 449 U.S. 903 (1980); *In re Santarelli,* 740 F.2d 816, *reh'g denied,* 749 F.2d 733 (11th Cir. 1984).

[10] *See In re Agosto,* 553 F. Supp. 1298 (D. Nev. 1983).

[11] *See In re A & M,* 61 A.D.2d 426, 403 N.Y.S.2d 375, 6 A.L.R.4th 532 (1978); *People v. Fitzgerald,* 101 Misc. 2d 712, 422 N.Y.S.2d 309 (1979).

[12] *See* Idaho Code § 9–203(7) (1979 & Supp. 1986); Mass. Gen. Laws Ann. ch. 233, § 20 (West Supp. 1988); Minn. Stat. § 595.02(1)(i) (1986 & Supp. 1987).

In general, a privilege may be based on constitutional law, a statute, or the common law. Most privileges in this jurisdiction are statutory.[14] However, this court has "neither asserted that the power to establish a privilege rests solely with the Legislature nor denied the authority of the court to create a privilege."[15]

Accordingly, we retain the authority to establish a parent–child privilege if one is clearly warranted. However, in examining the arguments set forth in support of such a privilege, we must bear in mind that "[the] exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth."[16]

The parents initially assert that Washington State Constitution article 1, section 7 and article 1, section 30 create a right of privacy that prevents compelled disclosure of confidential communications between parents and children in a criminal investigation. They also claim that a right of privacy which encompasses a parent–child privilege is a "well–established component of federal constitutional theory".

While compulsory disclosure of parent–child communications may invade a family's privacy to some degree, such

---

[13]*See, e.g.,* Coburn, *Child–Parent Communications: Spare the Privilege and Spoil the Child,* 74 Dick. L. Rev. 599 (1970); Stanton, *Child–Parent Privilege for Confidential Communications: An Examination and Proposal,* 16 Fam. L.Q. 1 (1982). *But see* Schlueter, *The Parent–Child Privilege: A Response to Calls for Adoption,* 19 St. Mary's L.J. 35 (1987) (includes a critique of proposed ABA Model Parent–Child Privileges Statute); Comment, *Parent–Child Privilege: Constitutional Right or Specious Analogy?,* 3 U. Puget Sound L. Rev. 177 (1979).

[14]*See, e.g.,* RCW 5.60.060(2) (attorney–client); RCW 5.60.060(5) (governmental information); RCW 5.60.060(1), 26.20.071, 26.21.170 (husband–wife); RCW 5.60.060(4) (physician–patient).

[15]*Senear v. Daily Journal–Am.,* 97 Wn.2d 148, 154, 641 P.2d 1180 (1982) (recognizing a qualified common law privilege for journalists in civil actions).

[16]*Nixon,* at 710.

an invasion does not automatically mean that such communications must be privileged. If an invasion of privacy signaled the right to a privileged communication, there would be little testimony offered in our courts of law. As explained by Professor Wigmore,

> When the course of justice requires the investigation of the truth, no man has any knowledge that is rightly private. All that society can fairly be expected to concede is that it will not exact this knowledge when necessity does not demand it, or when the benefit gained by exacting it would in general be less valuable than the disadvantage caused; and the various privileges are merely attempts to define the situations in which, by experience, the exaction would be unnecessary or disadvantageous. The duty runs on throughout all, and does not abate; it is merely sometimes not insisted upon.

(Footnote omitted.) 8 J. Wigmore, *Evidence* § 2192, at 72 *(1961). It is* thus clear that testimony is the rule and privilege is the exception.

█ Contrary to the parents' assertions, our examination of constitutional theory does not lead us to the conclusion that a parent–child privilege is one such exception under federal constitutional law. It is true that a series of Supreme Court cases has established a familial right to privacy.[17] The familial right to privacy thus created extends to fundamental personal rights, and does not appear to us to support a parent–child privilege.[18] Indeed, no federal appellate court has concluded that the United States Supreme Court's recognition of the importance of the parent–child relationship warrants a constitutionally

---

[17]*See, e.g., Loving v. Virginia,* 388 U.S. 1, 12, 18 L. Ed. 2d 1010, 87 S. Ct. 1817 (1967) (marriage); *Skinner v. Oklahoma ex rel. Williamson,* 316 U.S. 535, 541–42, 86 L. Ed. 1655, 62 S. Ct. 1110 (1942) (procreation); *Griswold v. Connecticut,* 381 U.S. 479, 14 L. Ed. 2d 510, 85 S. Ct. 1678 (1965) (contraception); *Prince v. Massachusetts,* 321 U.S. 158, 88 L. Ed. 645, 64 S. Ct. 438 (child rearing and education), *reh'g denied,* 321 U.S. 804 (1944).

[18]*Heard,* at 429; *see also* Schlueter, 19 St. Mary's L.J. at 46–47.

based parent–child testimonial privilege.[19] One federal district court, however, has so held.[20] The prevailing view in the federal courts, and one with which we concur, is that "generalized claims regarding the well–recognized sanctity of family life must give way to the overriding needs of the truth–seeking process."[21]

The parents are no more successful in finding cases that support their claim of a parent–child privilege rooted in our state constitution. While we have recognized that the right of privacy guaranteed by Const. art. 1, § 7 includes the right to be left alone, we have also recognized that such a right is not absolute.[22] While our system of law accords deference to the family, societal interests at times must transcend family interests.[23] Washington law clearly holds that there is a general duty to give what testimony one is capable of giving.[24] Such a duty has traditionally been extended to family members other than spouses.[25] We find no case law that compels a variation of that duty under the Washington Constitution. Society's interest in obtaining all facts relevant to a criminal investigation outweighs a privilege that is only vaguely rooted in constitutional theory.[26]

---

[19]*See United States v. Davies,* 768 F.2d 893, 899 (7th Cir.), *cert. denied,* 474 U.S. 1008 (1985).

[20]*See Agosto,* at 1304.

[21]*Davies,* at 899.

[22]*Myrick v. Pierce Cy. Comm'rs,* 102 Wn.2d 698, 703, 677 P.2d 140, 687 P.2d 1152 (1984).

[23]*See* Comment, 3 U. Puget Sound L. Rev. at 215.

[24]*Senear,* at 153; *State ex rel. Haugland v. Smythe,* 25 Wn.2d 161, 168, 169 P.2d 706, 165 A.L.R. 1295 (1946).

[25]*See* Comment, 3 U. Puget Sound L. Rev. at 215; RCW 5.60.060(1).

[26]*See In re Dinnan,* 661 F.2d 426, 429–30 (5th Cir. 1981), *cert. denied,* 457 U.S. 1106 (1982).

There is no constitutional basis for a parent–child testimonial privilege. As one local commentator has explained,

> The Constitution does not mandate recognition of a parent–child privilege. The right of privacy line of cases gives no indication that the interest in confidential communications between parent and child qualifies as a fundamental right for the purpose of substantive due process analysis. Any infringement of this interest caused by nonrecognition of a parent–child privilege is indirect and incidental. At any rate, the fundamental state interest in the integrity of the fact–finding process is sufficiently compelling to override the interest in the privacy of parent–child communications.

Comment, *Parent–Child Privilege: Constitutional Right or Specious Analogy?*, 3 U. Puget Sound L. Rev. 177, 210–11 (1979).[27]

■ The parents next argue that there is a common law basis for adopting a parent–child testimonial privilege. Four fundamental conditions must be satisfied before this court will establish a privilege against the disclosure of communication under the common law:

> (1) The communications must originate in a *confidence* that they will not be disclosed.
> (2) This element of *confidentiality must be essential* to the full and satisfactory maintenance of the relation between the parties.
> (3) The *relation* must be one which in the opinion of the community ought to be sedulously *fostered.*
> (4) The *injury* that would inure to the relation by the disclosure of the communications must be *greater than the benefit* thereby gained for the correct disposal of litigation.

8 J. Wigmore, *Evidence* § 2285 (1961), cited in *State ex rel. Haugland v. Smythe,* 25 Wn.2d 161, 168, 169 P.2d 706, 165 A.L.R. 1295 (1946).[28]

Under the showing made in this case, we will assume that the defendant probably spoke to his parents about the

---

[27]*See also Heard,* at 429; Schlueter, 19 St. Mary's L.J. at 47–48.

[28]*See Senear,* at 153.

murder charge in the belief that his conversation would not be disclosed. We deem the first condition, therefore, to be satisfied here.

We do not, however, perceive that such confidentiality is essential to a successful parent–child relationship, as the second condition of Professor Wigmore's test requires. Privileges are intended to guarantee confidentiality only when the parties would not fulfill the essential demands of the relationship without secrecy.[29] Confidentiality is truly essential, for example, to a successful attorney–client relationship. Complete candor and full disclosure by the client are necessary if the attorney is to function effectively.[30] In the attorney–client situation, confidentiality encourages the client to disclose damaging or embarrassing information that might not otherwise be revealed so that the attorney may help the client.[31]

It appears highly doubtful to us that a parent–child privilege would encourage such disclosure, or that the absence of such a privilege would impair the success of a given parent–child relationship.[32] We cannot help but observe that children often seem more reluctant to discuss private matters with their parents than with, for example, trusted advisors or friends, especially when those matters concern misdeeds of the child. Bonds other than shared secrets typically hold the parent–child relationship together.[33] We do not consider the second condition of

---

[29]*See* 8 J. Wigmore § 2380a, at 829; Schlueter, 19 St. Mary's L.J. at 40–41.

[30]C. McCormick, *Evidence* § 87, at 205 (3d ed. 1984); *see also* 8 J. Wigmore § 2291; Schlueter, *The Parent–Child Privilege: A Response to Calls for Adoption,* 19 St. Mary's L.J. 35 (1987).

[31]C. McCormick § 87, at 205.

[32]*See* Schlueter, 19 St. Mary's L.J. at 48–49.

[33]*See* Comment, *Parent–Child Privilege: Constitutional Right or Specious Analogy?,* 3 U. Puget Sound L. Rev. 177, 193 (1979) and authorities cited therein.

Wigmore's common law test to be satisfied by the parent–child privilege.

Thus we come to the third criterion. Of course the parent–child relationship is one which society should foster. It does not logically follow, however, that creating an evidentiary privilege for parent–child communications would add significant support to the average parent–child relationship.[34]

We similarly conclude that the proposed parent–child privilege fails the fourth condition of the Wigmore test. Any injury to the parent–child relationship from nonrecognition of such a privilege appears relatively insignificant. If recognized, such a privilege would probably not encourage parent–child communications if for no other reason than that it is unlikely many children would be aware of such a rule.[35] Any injury caused the family by nonrecognition of the privilege is hypothetical at best, and must yield to the real damage that a parent–child privilege would inflict upon the truth–seeking function of legal proceedings. As a local commentator on the subject has aptly observed,

> In litigation the truth is seldom manifest, and the danger of an erroneous verdict increases whenever the trier of fact must reach a decision with less than all available relevant evidence. Thus, every privilege impairs the administration of justice, and this burden is tolerable only when the corresponding benefit is clear.

(Footnote omitted.) Comment, *Parent–Child Privilege: Constitutional Right or Specious Analogy?*, 3 U. Puget Sound L. Rev. 177, 194 (1979).[36] We fail to see any clear benefit to be gained by recognizing a parent–child privilege. It is our conclusion that any injury to the parent–child

---

[34]*See* Schlueter, 19 St. Mary's L.J. at 53.

[35]*See* Comment, 3 U. Puget Sound L. Rev. at 194; *see also* Schlueter, 19 St. Mary's L.J. at 56.

[36]*See also Trammel v. United States,* 445 U.S. 40, 50, 63 L. Ed. 2d 186, 100 S. Ct. 906 (1980).

relationship caused by compelling the testimonial disclosure of confidential communications is outweighed by the potential benefit afforded to society by obtaining all of the facts relevant to a criminal case.

The parents' final argument is that "public policy" favors a parent–child privilege. Public policy grounds supporting a parent–child privilege are generally considered to fall within four broad categories, some of which have already been discussed: (1) the public interest in privacy; (2) the preservation of the family; (3) the general repugnancy of family members testifying against each other; and (4) the potential of perjury or contempt resulting from compelled testimony of family members.[37]

As observed earlier, the right to privacy is important, but is not sufficient in and of itself to warrant creating a parent–child privilege.[38] We also are not persuaded that a parent–child privilege is essential to preservation of the family. We do not foresee court–compelled testimony as causing family dissension or discouraging future communications between parents and children.[39] The repugnancy argument seems to be more of an appeal to sentiment since it rests on no distinct threat of direct or practical harm to the family, over and above the harm already caused to the family by allegations of criminal conduct against one of its members.[40] Emotions alone cannot be allowed to obstruct the administration of justice.[41] Finally, basing recognition of an evidentiary privilege on the refusal of some witnesses to testify or on a fear of perjury is to us unsound. To follow such a line of reasoning would necessitate granting privileges to a wide range of professional and semi–professional

---

[37]Comment, 3 U. Puget Sound L. Rev. at 181.

[38]*See* Schlueter, 19 St. Mary's L.J. at 47.

[39]*See* 8 J. Wigmore § 2228; *see also* Schlueter, 19 St. Mary's L.J. at 48–49.

[40]8 J. Wigmore § 2228; *see also* Schlueter, 19 St. Mary's L.J. at 53–54.

[41]C. McCormick § 86, at 202; 8 J. Wigmore § 2228.

groups, distant relatives and even to friends of criminal defendants.[42] While perjury is always a possibility in any testimony from a witness who is close to a party, the trier of fact is not unable to gauge the credibility of such testimony by observing the witness' demeanor and cross examination.

Policy reasons against creating a parent–child privilege center on the loss of valuable evidence. We conclude that the loss of evidence concern outweighs the public policy arguments in favor of a parent–child privilege. We agree with the United States Supreme Court that excluding relevant evidence by creating a privilege is warranted only if the resulting public good transcends the normally predominant principle of using all rational means for ascertaining the truth.[43] We do not, however, perceive any transcending good that would result from creating a parent–child testimonial privilege, and we decline to judicially recognize such a privilege in this state.

The orders of the Superior Court directing the parents to answer deposition questions concerning their conversations with the defendant, and to be jailed until they do answer those questions, were proper.

Affirmed.

PEARSON, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DORE, CALLOW, GOODLOE, and DURHAM, JJ., concur.

---

[42]*See* Comment, 3 U. Puget Sound L. Rev. at 190; *see also* Schlueter, 19 St. Mary's L.J. at 54–55.

[43]*Trammel,* at 50.