### In re INQUEST PROCEEDINGS

[676 A.2d 790]

No. 96-108

March 21, 1996. Appellants, parents of a twenty-five-year-old son, appeal from an order of the Chittenden District Court that denied their motion to quash an inquest subpoena and held them in civil contempt for failing to testify at an inquest proceeding. Appellants assert a testimonial parent-child privilege with respect to any incriminating communications imparted to them in confidence by their son and to their own observations of any incriminating conduct of their son. We affirm.

Vermont has not recognized a parent-child privilege either at common law or in our rules of evidence. Indeed, the majority of states and federal circuits have refused to recognize such a privilege. See, e.g., *State v. Willoughby*, 532 A.2d 1020, 1021 (Me. 1987); see also Note, *Parent-Child Loyalty and Testimonial Privilege,*

100 Harv. L. Rev. 910, 913 n.20, 915 n.31 (1987) (collecting cases). Although commentators have argued in favor of a parent-child privilege on both constitutional grounds, see Note, *supra*, at 916 n.33, and social-policy grounds, see *id.* at 915-25, the courts that have rejected such a privilege have found no "systematic regulation" of protected family interests that might give rise to a constitutional claim. See *United States v. Davies*, 768 F.2d 893, 899-900 (7th Cir.), *cert. denied*, 474 U.S. 1008 (1985). Nor have those courts found that a policy of protecting family bonds outweighs the public's interest in uncovering the truth during criminal investigations. See *State v. Maxon*, 756 P.2d 1297, 1302 (Wash. 1988).

Appellants rely on two trial court decisions to support their position. See *In re Agosto*, 553 F. Supp. 1298, 1325 (D. Nev. 1983); *People v. Fitzgerald*, 422 N.Y.S.2d 309, 310 (Westchester County Ct. 1979). *Agosto* involved a claim of testimonial privilege asserted by a son with respect to a criminal investigation of his father. In recognizing such a privilege, the federal district court found that the government's "important goal in presenting all relevant evidence before the court . . . [does not] outweigh the family's interests in its integrity and inviolability, which spring from the rights of privacy inherent in the family relationship itself." *Agosto*, 553 F. Supp. at 1325. The court in *Agosto* thus did not limit its holding to a child's claim of privilege with respect to a parent's communications, but rather granted "a parent or child the right to claim such a privilege to protect communications made within an indissoluble family unit, bonded by blood, affection, loyalty and tradition." *Id.*

*Fitzgerald* involved a claim of testimonial privilege asserted by a father with respect to allegedly incriminating statements made by his twenty-three-year-old son. In recognizing the existence of a parent-child testimonial privilege in New York State, the county court found that "[c]onfidential communications, *by their very nature,* in order to foster the ongoing confidential parent-child communications between parent and child, must *remain* confidential and private if the parties so desire, and be without the power of the state to inquire." *Fitzgerald,* 422 N.Y.S.2d at 312. The court thus found that the injury that would inure from disclosure of the communications outweighed the State's benefit in its disposal of litigation. *Id.*

We decline to follow *Agosto* and *Fitzgerald*. *Agosto* has not been followed by the federal courts that have considered it, including the federal appeals court of our own circuit. See *In re Matthews*, 714 F.2d 223, 224 (2d Cir. 1983) (terming *Agosto* a "departur[e] from the traditional rule in federal courts that, other than the spousal privilege, there is no privilege that permits a person not to testify against family members") (citation omitted). Moreover, the Nevada federal district court in *Agosto* was itself at odds with the settled law of the Ninth Circuit. See *United States v. Penn*, 647 F.2d 876, 885 (9th Cir.) ("There is no judicially or legislatively recognized general 'family' privilege . . . ."), *cert. denied*, 449 U.S. 903 (1980).

Likewise, *Fitzgerald* has not been followed by any New York court decision, and has since been limited by *People v. Harrell*, 450 N.Y.S.2d 501, 504 (App. Div. 1982) ("[C]ommunications between parent and child do not enjoy the protection of the Sixth Amendment, nor are they privileged either under common law or by statute."), *aff'd*, 449 N.E.2d 1263, 1264 (N.Y. 1983), and has been overruled on its facts by *People v. Johnson*, 644 N.E.2d 1378, 1379 (N.Y. 1994) ("[A] parent-child testimonial privilege (which defendant urges be adopted to preclude his mother's testimony) would not even arguably apply in that defendant was 28 years old at the time of the conversation with his mother . . . .").

Our own cases have "stress[ed] the care with which we must approach any request to create a new privilege." *Douglas v. Windham Superior Court*, 157 Vt. 34, 39, 597 A.2d 774, 777 (1991). "Because of their interference with truthseeking, privileges are strongly disfavored." *Id.* at 40, 597 A.2d at 777. Accordingly, we have adopted Dean Wigmore's four-part test for recognition of a testimonial privilege, which requires that:

"(1) The communications must originate in a *confidence* that they will not be disclosed.

(2) This element of *confidentiality must be essential* to the full and satisfactory maintenance of the relation between the parties.

(3) The *relation* must be one which in the opinion of the community ought to be sedulously *fostered*.

(4) The *injury* that would inure to the relation by the disclosure of the communications must be *greater than the benefit* thereby gained for the correct disposal of litigation."

*Id.* at 40, 597 A.2d at 777-78 (quoting 8 Wigmore on Evidence § 2285, at 527 (McNaughton ed. 1961)). The party seeking creation of the privilege has the burden of satisfying the four Wigmore conditions, *id.* at 41, 597 A.2d at 778, and must satisfy all four conditions before the privilege will be recognized. *Id.* at 40, 597 A.2d at 778.

In the instant matter, appellants and the State are in agreement on the first and third factors: that the communications at issue originated in confidence, and that the parent-child relationship is one that should be sedulously fostered. The parties disagree, however, whether maintaining the confidentiality of the communications is essential to the full and satisfactory maintenance of the parent-child relationship, and whether the injury to the parent-child relationship that would result from disclosure outweighs the public benefits to be gained.

We conclude that appellants have failed to meet their burden on the second and fourth factors of the Wigmore test. Appellants' son, although living at home and employed in his father's business, is nonetheless an adult. The record suggests that the son suffers from dyslexia and associated learning disabilities, but there is no allegation or indication that he is incompetent to make life decisions for himself. Our laws recognize the special circumstances arising when minors or incompetent adults are involved in delinquency or criminal proceedings. See, e.g., 33 V.S.A. § 5524 (in delinquency proceeding, out-of-court confession of juvenile is insufficient to support adjudication of delinquency unless corroborated in whole or in part by other substantial evidence); 13 V.S.A. § 4816(c) (no statement made in course of court-ordered competency examination shall be admitted as evidence in any criminal proceeding). But such circumstances are not present in the instant matter. The relationship between an adult child and a parent is not one requiring confidentiality for its full and satisfactory maintenance. It is not this Court's, or any court's, duty to encourage adult children to share confidences with their parents; nor is it a court's duty to create an evidentiary rule that protects such confidences from disclosure when they are shared with parents. Accordingly, the second factor of the Wigmore test is not present under the facts of this case.

Nor is the fourth factor of the Wigmore test met on the facts at issue here. Harm may inure to the relationship between an adult child and a parent when the parent discloses the adult child's confidences, and this harm may vary depending on the closeness of the particular family. But we do not agree on the present record that such harm outweighs the public interest in seeking the truth within the context of a criminal investigation.

As appellants point out, we have recognized that "the freedom of children and

parents to relate to one another in the context of the family, free of governmental interference, is a basic liberty long established in our constitutional law." *In re N.H. (Juvenile)*, 135 Vt. 230, 236, 373 A.2d 851, 856 (1977); see *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923). *N.H.* involved the disposition of custody of a child found to be in need of care and supervision (CHINS). While acknowledging the "fundamental liberty" involved in the parent-child relationship, we also noted that our CHINS statute "expressly provide[s] that a child be separated from its parents 'only when necessary for his welfare or *in the interests of public safety*.'" *Id.* (quoting 33 V.S.A. § 631(a)(3)) (current version at 33 V.S.A. § 5501(a)(3)) (emphasis added). Similarly, in *Meyer*, the United States Supreme Court recognized that the rights "to marry, establish a home and bring up children" are among "those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men." *Meyer*, 262 U.S. at 399. Nevertheless, the Court went on: "The established doctrine is that this liberty may not be interfered with, under the guise of protecting the public interest, by legislative action which is arbitrary or without *reasonable relation to some purpose within the competency of the State to effect*." *Id.* at 399-400 (emphasis added). Thus, even in *N.H.* and *Meyer*, both of which involved minor children, the courts acknowledged that public interests could outweigh private family interests.

The supreme courts of other states, when called upon to consider a parent's interest in preserving a child's confidential communications in light of the privacy interests recognized by the United States Supreme Court in *Meyer* and its progeny, have held that an order to appear and testify did not implicate interests "of core importance to the home and the family." *Willoughby*, 532 A.2d at 1022; accord *Maxon*, 756 P.2d at 1301. In *Maxon*, the Washington Supreme Court declared:

"The Constitution does not mandate recognition of a parent-child privilege. The right of privacy line of cases gives no indication that the interest in confidential communications between parent and child qualifies as a fundamental right for the purpose of substantive due process analysis. Any infringement of this interest caused by non-recognition of a parent-child privilege is indirect and incidental. At any rate, the fundamental state interest in the integrity of the fact-finding process is sufficiently compelling to override the interest in the privacy of parent-child communications."

*Maxon*, 756 P.2d at 1301 (quoting Comment, *Parent-Child Privilege: Constitutional Right or Specious Analogy?*, 3 U. Puget Sound L. Rev. 177, 210-11 (1979)).

We agree with the Maine and Washington courts that the confidentiality interest asserted by appellants in the instant matter does not implicate a constitutional liberty interest. We need not decide today, however, whether a parent's interest in protecting a minor or incompetent child's confidential communications or conduct could ever outweigh the public interest in the criminal fact-finding process. Because appellants' son is a competent adult, we find that the public's interest in securing and preserving valuable evidence in a criminal investigation outweighs the indirect intrusion into family life resulting from a testimonial obligation.

On the facts presented, therefore, we decline appellants' invitation to create a parent-child privilege that would permit appellants to refuse to disclose incriminating statements or conduct revealed to them in confidence by their son.

*Affirmed; mandate to issue forthwith; cause remanded for new order to be issued by the district court.*