# In re Grievance of Gloria Danforth

[812 A.2d 845]

Nos. 00-185 & 01-022

Present: **Dooley, Morse, Johnson and Skoglund, JJ., and Cohen, Supr. J., Specially Assigned**

Opinion Filed October 4, 2002

*Kimberly B. Cheney* of *Cheney, Brock & Saudek, P.C.*, Montpelier, for Plaintiff-Appellee (00-185) / Appellant (01-022).

*Daniel L. Burchard* of *McCormick, Fitzpatrick, Kasper & Burchard, P.C.*, Burlington, and *Elizabeth F. Novotny*, Department of Public Safety, Waterbury, for Defendant-Appellant (00-185) / Appellee (01-022).

**Skoglund, J.** The issue raised by these consolidated, interlocutory appeals is whether the Vermont Labor Relations Board (the "Board") has jurisdiction and authority to order disclosure of confidential information contained in the records of the Vermont Department of Public Safety Internal Affairs Unit. The Vermont Department of Public Safety (the "Department") appeals a Board decision ordering it to release redacted Internal Affairs Unit (IAU) records to grievant, former police sergeant Gloria Danforth. Danforth cross-appeals claiming that the Board erred in denying her subpoena request for the Department's "command and review sheets." Danforth also appeals a second Board order, concerning the same underlying facts, denying her subpoena request for IAU records of investigations which may have occurred subsequent to her dismissal. We affirm the challenged decisions of the Board.

These appeals were born of a grievance hearing brought by Danforth and other female employees against the Department over alleged discrimination and retaliation within the Department based on their gender, prior complaints they made regarding Departmental practices, and Danforth's prior grievance activity.[1] During that grievance hearing, in an effort to impeach an adverse witness who was

---

[1] In 1991, Sgt. Danforth initiated a civil action against the Department seeking redress for sex discrimination. In 1994, the Department entered into a settlement agreement and consent decree in *Danforth v. State Department of Public Safety*, Docket S-438-91WnCv, in Washington Superior Court in which the Department admitted that: "Sgt. Danforth has experienced sexual harassment through a hostile environment that has negatively impacted her career achievements." *In re Danforth*, V.L.R.B. No. 99-62 (Sep. 30, 1999); see also *In re Barney*, 172 Vt. 530, 772 A.2d 1074 (2001) (mem.) (affirming Labor Board's finding that Danforth was discriminated against by the Department for whistle blowing).

also a sergeant with the Department, Danforth's attorney asked the witness if he had ever told Danforth he had lied in a deposition. Prompted by this pregnant question, an IAU investigation was summarily brought to determine if the witness had, in fact, lied in a deposition. With one business day's notice, Danforth was ordered to appear as a material witness at the IAU investigative interview of the witness.

Danforth was unable to obtain counsel for the IAU interview, in accordance with her rights under Department Rules and Regulations, see Department Rules and Regulations, Section III, Art. III, § 7.5, after only one business day's notice of the investigative interview.[2] The investigating officer excused her appearance and ordered her to appear four days later. She was again unsuccessful in obtaining counsel, but attended the interview nonetheless, asserting her right to counsel and refusing to answer questions until she obtained one. Three days later, Danforth herself became the subject of a separate IAU investigation based on her alleged violation of the Department's code of conduct by deliberately failing to obey a lawful order, and by failing to fully and truthfully answer questions in connection with an internal investigation. Again she was ordered to appear before an IAU investigator and again she was unable to obtain counsel. She answered some, but not all questions — refusing to answer questions without her "counsel of choice" present.

The commissioner of the Department delivered formal written charges to Danforth pursuant to 20 V.S.A. § 1880, advising that her actions during the IAU investigation violated the Department's code of conduct. In accordance with 20 V.S.A. § 1880, the charges advised Danforth that she had a right to have the matter determined by a hearing panel comprised of members of the Department, and that if she did not request such a hearing, the commissioner would take such disciplinary action as he deemed appropriate, including dismissal. Danforth did not request a hearing panel. The commissioner then determined that her violations of the Department's code of conduct warranted her dismissal.

Danforth appealed the disciplinary action to the Labor Board as authorized by 20 V.S.A. § 1880, asking the Board to overturn her dismissal. Her appeal asserts that her dismissal was "without just cause and with improper motives." She claims she is the only member of the Department who has been ordered to answer questions by IAU

---

[2] She did not want her original attorney to represent her as he had precipitated the problem by asking the question.

without counsel present, after one business day's notice, and after asserting her right to have counsel for such questions. She also claims her dismissal constituted retaliation for exercising her First Amendment rights, engaging in grievance activity and whistle blowing, and was a discriminatory violation of the collective bargaining agreement between the State and the Vermont State Employees' Association (VSEA), which requires discipline to be applied consistently and uniformly. VSEA, State Police Bargaining Unit, Art. 14, § 2(c).

In accordance with her grievance appeal before the Board, Danforth sought discovery and issued subpoenas duces tecum on the commissioner to obtain the following information in the appeal hearing:

> 1. Reports of all allegations of misconduct by state police officers, and the findings as to such allegations, submitted by the commissioner of public safety to the State Police Advisory Commission since January 1, 1995. Such reports may be redacted so that the name of the individual state police officer is not revealed so long as the log shows the alleged misconduct and the disposition, and is in such a form to permit a determination whether discipline is imposed on members uniformly.

> 2. Copies of the written log made with respect to each allegation of misconduct relating to any state police officer maintained pursuant to 20 V.S.A. § 1923(c) since January 1, 1995. Such reports may be redacted so that the name of the individual state police officer is not revealed so long as the log shows the alleged misconduct and the disposition, and is in such a form as to permit a determination whether discipline is imposed on members uniformly.

> 3. Copies of the records of the Office of Internal Investigation relating to Sargent [sic] Gloria Danforth.

> 4. Copies of the Command and Review Sheets (or records) relating to the referral of charges against and dismissal from employment of Detective Sergeant Gloria Danforth.

> 5. Copies of any e-mails, notes, or written material of any sort, not otherwise requested, from or to the Commissioner of Public Safety relating to the referral of charges against

and dismissal from employment of Detective Sergeant Gloria Danforth.

After being served with these subpoenas, the Department and the state police advisory commission (SPAC)[3] both filed timely motions to quash pursuant to V.R.C.P. 45(c)(3), arguing that the records created and maintained by the Department's IAU are confidential under 20 V.S.A. § 1923(d)(3) and can be disclosed only at SPAC's direction.

The Labor Board issued an order, granting the motions in part, denying them in part, and commanding the Department to produce summaries containing limited information of internal affairs investigations concerning misconduct by state police officers since January 1, 1995, relevant to Danforth's allegations, including: the case number; the date the member being investigated was notified of the charges; the date the member was interviewed; whether the member requested that an attorney be present for the interview; all cases in which the interview took place after the member requested legal counsel without legal counsel for the member present; and all cases in which discipline was taken for refusal to answer questions without legal counsel present. The Board also granted Danforth's subpoena requesting IAU records relating to the time usually given to officers to obtain counsel and respond to an IAU investigation. The Board's order recognized the importance of anonymity and the difficulty maintaining such in "a state of Vermont's size" and so ordered that "[t]he summaries of allegations and findings should be prepared so that the identity of the involved state police officer is not revealed." It further ordered that the summaries set forth the alleged misconduct and the Department's disposition "in such a form to permit a determination whether discipline is imposed on members uniformly and consistently." Danforth's subpoena requesting copies of IAU command and review sheets which allegedly include reasons for her dismissal was denied because the Board found she had failed to make a sufficient showing of need. Both parties filed timely motions to reconsider, which were denied. Both parties appeal.

On appeal, the Department argues that the Board lacked jurisdiction to order the Department to disclose IAU records, that those records are confidential under 20 V.S.A. § 1923, and, assuming the Board has jurisdiction, the Board's order was both overbroad and

---

[3] The state police advisory commission was created to "provide advice and counsel to the commissioner in carrying out his responsibilities for the management, supervision and control of the Vermont state police." 20 V.S.A. § 1922(a).

unduly onerous. Danforth cross-appeals asserting that she needs the command and review sheets in order to determine if reasons other than the alleged failure to answer questions at the IAU investigation motivated her dismissal. She also brings a second appeal of the Board's later denial of her subpoena for IAU records of investigations that may have been brought subsequent to her dismissal.

## I.

The Department argues that the Board lacks jurisdiction to order the disclosure of confidential IAU records. We disagree.

As a public administrative body, jurisdiction of the Board is exclusively conferred by statute. *Boynton v. Snelling*, 147 Vt. 564, 565, 522 A.2d 232, 233 (1987). Under the State Employees Labor Relations Act (SELRA or the "Act") the Board is authorized to "hear and make final determination[s] on the grievances of all employees who are eligible to appeal grievances to the board." 3 V.S.A. § 926. "Grievance" is defined by the Act as "an employee's ... expressed dissatisfaction, presented in writing, with aspects of employment or working conditions under collective bargaining agreement or the discriminatory application of a rule or regulation, which has not been resolved to a satisfactory result through informal discussion with immediate supervisors." 3 V.S.A. § 902(14); *In re Guttman*, 139 Vt. 574, 576, 431 A.2d 491, 493 (1981). State police members are included within the meaning of "state employee." 3 V.S.A. § 902(5)(A).

The Department argues that, technically, Danforth's action before the Board cannot be a "grievance" governed by SELRA because that Act applies to "the state police in the department of public safety except for matters of discipline, disciplinary action, transfer or suspension and those items specifically covered by statute." 3 V.S.A. § 1004. Rather, the Department argues, this action is an "appeal" taken from a disciplinary discharge and thereby governed solely by 20 V.S.A. § 1880: "[a]ny disciplinary action taken by the department against a member of the department, except a temporary suspension, shall be taken pursuant to the procedures set forth in this section." *Id.* The Department claims the Board's authority under the statutory scheme of 20 V.S.A. § 1880 is significantly more limited than its authority under SELRA.

Under 20 V.S.A. § 1880, a member of the Department who receives written charges of misconduct has two choices on how to proceed. The member may first choose to file a request for a hearing before a hearing panel. *Id.* § 1880(b). If the member chooses this option, the

statute authorizes the hearing panel to issue subpoenas, to schedule an adversarial, evidentiary hearing, and to determine whether the charges underlying the dismissal are proved by a preponderance of the evidence. *Id.* § 1880(d). If the member does not request a hearing, the commissioner "may take such disciplinary action as the commissioner deems appropriate." *Id.* § 1880(c). Under this option, the member may appeal the charges and the disciplinary action taken by the commissioner to the Labor Board. *Id.* The statute further provides that "[a]ll hearings before the board . . . shall be de novo." *Id.*

As an appeal governed by 20 V.S.A. § 1880, the Department claims that the Board's authority is limited to performing the same functions as hearing panels under that statute, that is, making a sole determination whether or not the Department has proved the grounds for dismissal by a preponderance of factual evidence relating to the appellant's conduct. As a result of this purported limit on the Board's authority, the Department seems to conclude that the Board may not order discovery of materials relating to contractual rights delineated in the parties' collective bargaining agreement. Therefore, the Department argues, in matters of police discipline governed by 20 V.S.A. § 1880, the Board may not exercise the authority it enjoys under SELRA to order release of records in order to evaluate whether the discipline was imposed in accordance with the collective bargaining agreement.

The Department's contention, that § 1004 of SELRA exempts state police discipline from consideration by the Board, is tempting in its simplicity. That approach, however, fails to consider the legislative history and evolution of 20 V.S.A. § 1880, fails to acknowledge the inclusion of state police as members under SELRA, and fails to heed the erosion of § 1004 in light of SELRA's statutory scheme related specifically to state police member working conditions. Finally, the very existence of a collective bargaining agreement between the Department and state police members, replete with provisions pertaining to Department disciplinary and corrective action, further undermines the Department's premise that Department disciplinary matters are excluded from the precepts of a collective bargaining agreement enforceable under SELRA.

An early version of § 1880 allowed a member of the Department to ask the district court to determine whether charges made against him or her had been proved or not proved by a preponderance of the evidence. 20 V.S.A. § 1880 (1983), amended by 20 V.S.A. §§ 1880(b)-1880(e), 1880(g), 1880(h) (1991); 20 V.S.A. § 1880 (1996). If the member

did not file with the court, the commissioner would appoint a panel to hold hearings to establish whether the charges had been proved by the same standard. *Id.* § 1880(c) (1983). Following a finding by either body that the charges had been proved, the court or the panel would make recommendations with respect to what action the commissioner should take. *Id.* § 1880(e) (1983). The member could then appeal to the Labor Board after the commissioner's action. *Id.* § 1880(f) (1983). In 1991, this version of § 1880 was invalidated on separation of powers grounds. *In re Kennedy*, 156 Vt. 645, 592 A.2d 893 (1991) (mem.) (holding that statute unconstitutionally made district court a hearing officer for potential personnel dispute between Department and state police officer). In response, the Legislature amended § 1880 and gave members the option of requesting appointment of a hearing board or, if no such request was made, the commissioner would appoint a hearing panel. See 1991, No. 25 (codified as 20 V.S.A. § 1880(c) (1991)). The 1991 amendment left in place the ability of the member to appeal to the Labor Board. *Id.*; 20 V.S.A. § 1880(f) (1991).

In 1996, § 1880 was again amended, resulting in the current scheme. See 1995, No. 98 (Adj. Sess.), § 1 (codified as 20 V.S.A. § 1880 (1996)). New language added by the 1996 amendment provides greater specificity about the scope of the Board's review of a state police officer's appeal of the commissioner's disciplinary action. *Id.* The current statute provides that the member can appeal *both* "the charges and the disciplinary action taken" to the Board and that all such appeals hearings before the Board are to be de novo. 20 V.S.A. § 1880(c).

When construing a statute "our overriding objective must be to effectuate the intent of the Legislature." *State v. Dixon*, 169 Vt. 15, 17, 725 A.2d 920, 922 (1999) (citation omitted). Provisions that are part of the same statutory scheme must be read in context and the entire statutory scheme read in pari materia. *Robes v. Town of Hartford*, 161 Vt. 187, 192, 636 A.2d 342, 346 (1993). The Legislature is presumed to make changes in light of existing law. *State v. Read*, 165 Vt. 141, 147, 680 A.2d 944, 948 (1996). With these principles in mind we examine the governing statutes.

Authorization to conduct a de novo hearing means that "the case shall be heard the same as though it had not been heard before." *Bookstaver v. Town of Westminster*, 131 Vt. 133, 136, 300 A.2d 891, 893 (1973). By requiring a de novo hearing, the statute empowers the Board to compel testimony and evidence by subpoena, examine witnesses and issue written findings. See *In re Bushey-Combs*, 160 Vt.

326, 328, 628 A.2d 541, 542 (1993) (holding that administrative board conducting hearings de novo is empowered to compel testimony and evidence by subpoena, examine witnesses and issue written findings).

Further, by allowing an employee to appeal both the commissioner's charges and the commissioner's disciplinary action, the statute confers a broader jurisdiction on the Board than is conferred on hearing panels under 20 V.S.A. § 1880. This authorization, coupled with the Board's explicit authority to hear these appeals in hearings de novo, forces the conclusion that the Board's role is not limited to simply determining whether charges are proven. Unlike the hearing panels and district court in the earlier version of § 1880, the Board does not function as a mere "hearing officer." See *In re Kennedy*, 156 Vt. at 646, 592 A.2d at 894.

Support is also found in the fact that the Legislature has authorized the state police to bargain collectively, see 3 V.S.A. §§ 902-903, which has resulted in collective bargaining agreements binding on the commissioner and the state police members. Article 5 of the current collective bargaining agreement prohibits, in relevant part, discrimination based on gender and on the filing of complaints and grievances. VSEA, State Police Bargaining Unit, Art. 5, § 1. Article 14 of the agreement provides that "no disciplinary action shall be taken without just cause," and "disciplinary action will be applied with a view toward uniformity and consistency." The collective bargaining agreement includes a grievance procedure culminating in an appeal to the Board. Under the contract, the Board is charged with authority to determine whether the commissioner's action was consistent with the collective bargaining agreement's provisions relating to discrimination and disciplinary action.

An interpretation of 20 V.S.A. § 1880 that confers jurisdiction on the Board to resolve all state police labor disputes, if an involved officer chooses not to use the hearing panels, is consistent with the legislative scheme under that statute, as well as the scheme under the parties' collective bargaining agreement.[4]

---

[4] Lending further support to a conclusion that the mandate of § 1004 of SELRA has become obsolete when viewed in the context of the surrounding statutory schemes is the statute governing a member's grievance of nondisciplinary transfers. That statute mandates: "[n]ondisciplinary transfers shall be grievable directly to the Vermont labor relations board in accordance with the rules of practice of the board. In any such grievance, the burden shall be on the grievant to establish that the transfer was either discriminatory or disciplinary." 20 V.S.A. § 1921(b).

■ The legislative amendments to chapter 113 of Title 20 relating to the discipline and transfer of members of the Department lead us to conclude that § 1004 of SELRA does not preclude the Labor Board's jurisdiction over this grievance. When read in context, the statutory provisions relevant to Department disciplinary actions and the Board's review thereof necessitates a finding that 20 V.S.A. § 1880 bestows upon the Board authority to determine whether charges are proved or not proved, as well as authority to review the actions of the commissioner challenged in this grievance to determine if they comport with collective bargaining provisions prohibiting discriminatory or disparate treatment. In short, the Board has authority to order production of evidence essential to its resolution of the parties' claims.

## II.

The Department claims that under the statute authorizing creation of the IAU, 20 V.S.A. § 1923, all records of the IAU are to be kept strictly confidential and the only entity with authority under § 1923 to release IAU records is SPAC.[5] Section 1923 mandates that "[r]ecords of the office of internal investigation shall be confidential," but makes three exceptions:

(1) The state police advisory commission shall, at any time, have full and free access to such records; and

(2) The commissioner shall deliver such materials from the records of the office of internal investigation as may be necessary to appropriate prosecutorial authorities having jurisdiction; and

(3) The state police advisory commission shall, in its discretion, be entitled to report to such authorities as it may deem appropriate, or to the public, or to both, to ensure proper action is taken in each case.

20 V.S.A. § 1923(d).

As the Court noted in *Douglas v. Windham Superior Court*, 157 Vt. 34, 39, 597 A.2d 774, 777 (1991), the most important point of privilege doctrine was set forth by Chief Justice Burger in *United States v. Nixon*, 418 U.S. 683 (1974). In discussing various privileges, including the Fifth Amendment protection against self-incrimination and that of attorney/client, he wrote,

---

[5] IAU records are exempt from public disclosure by the Public Records Act, except as provided in 20 V.S.A. § 1923. See 1 V.S.A. § 317(b)(18).

These and other interests are recognized in law by privileges against forced disclosure, established in the Constitution, by statute, or at common law. Whatever their origins, these exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth.

*Nixon*, 418 U.S. at 709-10.

We addressed the evidentiary privilege created under 20 V.S.A. § 1923 in *State v. Roy*, 151 Vt. 17, 32, 557 A.2d 884, 893 (1989), and held, under the facts presented therein, that IAU records were not discoverable. In *Roy*, defendant was charged with simple assault on a police officer. He sought access to IAU records concerning the victim/officer so that he could show the violent character of same. In that decision, we noted that "[w]e do not exclude the possibility that a defendant could have access to internal investigation files in a proper case and in a proper manner." *Roy*, 151 Vt. at 35, 557 A.2d at 895. [6]

Because this is not a criminal case, the analysis utilized in *Roy* is not applicable. However, this Court's approach to privilege doctrine and reluctance to interfere with the truth seeking function of litigation still applies. See *In re Inquest Proceedings*, 165 Vt. 549, 551, 676 A.2d 790, 792 (1996) (mem.) (noting that privileges are strongly disfavored for their interference with truthseeking); *Douglas v. Windham Superior Court*, 157 Vt. at 40, 597 A.2d at 777 ("Because of their interference with truthseeking, privileges are strongly disfavored."). Danforth is not trying to impeach police officers with their prior disciplinary history, but rather seeks IAU records to determine if the Department has violated the collective bargaining agreement and her constitutional rights. [7] To that end, the Board ordered production of only a limited

[6] In *Roy*, we affirmed the denial of access to the internal investigation file based on three reasons: (1) the procedural posture of the case, including the fact that defendant's discovery motion was untimely; (2) the defendant failed to make a sufficient case of need under the circumstances; and (3) the statutory privilege makes no provision for access to the confidential information by the courts. 151 Vt. at 34-35, 557 A.2d at 894. We then noted that the decision did not "exclude the possibility that a defendant could have access to internal investigation files in a proper case and in a proper manner." *Id.* at 35, 557 A.2d at 895. This footnote is offered as a response to the dissent's suggestion that the above quote from *Roy* was taken out of context.

[7] Danforth asserts that her First Amendment rights were violated because the actions taken against her were in retaliation for bringing suit against the Department for sex discrimination. See *Dangler v. New York City Off Track Betting Corp.*, 193 F.3d 130 (2d Cir. 1999) (dismissal of employee who blew the whistle on superiors is potential First Amendment violation which may be redressed under 42 U.S.C. § 1983). She also claims

242

category of cases that would be relevant to her claim that discipline was not applied uniformly and consistently in her case. Specifically, it noted that grievant was charged with violating § 14.0, Truthfulness, of Part A of the employer's disciplinary guidelines and that dismissal is available as the sanction for the first offense of the section. It found that some, but not all, of Part A offenses were relevant to grievant's allegation that she was not disciplined in a consistent and uniform manner. Those found relevant also included dismissal as a sanction for a first offense. The Board then listed the specific sections it found similar in nature to a violation of the truthfulness provision of § 14.0 and ordered employer to provide grievant with summaries of all allegations of misconduct by state police officers, and the findings as to such allegations, since January 1, 1995 covered by the specific sections found applicable.

Adhering to the mandate that all IAU records must be confidential except in those instances where SPAC authorizes their release would result in an injustice to complainants, such as Danforth, who claim they were unfairly treated by the Department. We assume the Legislature did not intend a statutory scheme which allows a member of the state police to bring a grievance to the Labor Relations Board based on a claim that they had been subjected to the discriminatory application of a rule or regulation, or a violation of the collective bargaining agreement that requires disciplinary action to be applied with a view toward uniformity and consistency, but which also creates an absolute shield against inquiries into how the Department treats its members through § 1923 of Title 20. To construe the statutes in this manner would prevent members of the state police from accessing the very evidence which may support a claim of disparate or discriminatory treatment.

The Department further claims that the Board abused its discretion by determining Danforth has a legitimate need for IAU records, and by failing to give sufficient weight to the confidentiality concerns of the statute. The Department claims that the Board's order that it summarize investigations of unrelated code violations and provide

---

the Department violated her Fifth and Fourteenth Amendment due process rights and right against deprivation of property without due process of law. Article 5 of the VSEA collective bargaining agreement prohibits discrimination, retaliation and harassment on the basis of gender and protected complaint and grievance activity. An employee's free speech and whistle blowing activities are protected against Department discrimination, retaliation and harassment under Article 53 of the collective bargaining agreement. An employer must apply discipline with a view toward uniformity and consistency under Article 14 of the agreement.

summaries of the timing and scheduling of every other IAU interview since January 1, 1995 was overbroad and unduly onerous. As discussed above, the scope and jurisdiction of the Board's power exceeds a mere determination of whether or not the charges have been proved by a preponderance of the evidence. Implicit in the authority of the Board to conduct a de novo hearing is the authority to compel disclosure and fashion its order in a manner it deems most appropriate. "We treat the Board's decisions with deference, and presume the Board's decisions are correct and reasonable." *In re Whitney,* 168 Vt. 209, 213, 719 A.2d 875, 878 (1998) (internal citations omitted). The Board's decision "will not be overturned unless it is shown to be clearly erroneous." *In re AFSCME, Local 490,* 153 Vt. 318, 321, 571 A.2d 63, 65 (1989).

The Board ruled that certain records must be disclosed to Danforth and those records must be redacted to ensure privacy. The Board's order was sufficiently narrow in scope to maintain the privacy of Department employees while still permitting Danforth access to pertinent IAU records. We find that the circumstances before us present a proper case warranting disclosure of confidential IAU records as limited by the Board. Nor has the Department convinced us that the Board's directive is unduly onerous.

We deny Danforth's cross-appeal seeking reversal of the Board's order denying her access to the Department's command and review sheets. We agree with the Board that Danforth has failed to make a sufficient showing of need for the information contained in these sheets. Pursuant to Section III, Art. IV, § 2.3 of the Department's Rules and Regulations, a charged member "shall be given a copy of all the statements and other evidence compiled during the course of the investigation into the allegations against him/her" at the time charges are served. The Department's compliance with these rules provides employees with sufficient notification and information relating to allegations of improper conduct made against them, and sufficient protection against unsubstantiated allegations, such that unimpeded access to internal affairs records is not required.

### III.

Danforth appeals a second Board order denying her subpoena seeking IAU records to determine if the Department conducted an investigation of another specified member of the Department subsequent to her dismissal and, if so, to evaluate the Department's

handling of the same.[8] She claims the information sought is necessary to determine whether the Department took disciplinary action towards that member in a manner consistent with the actions taken against her. Danforth contends that she is entitled to these IAU records in order to establish her claim that discipline was applied to her in a discriminatory manner because of her gender and in violation of Article 14 of the VSEA collective bargaining agreement requiring application of disciplinary action "with a view toward uniformity and consistency." The Department again moved to quash under V.R.C.P. 45(c)(3)(A) and claimed 20 V.S.A. § 1923 required confidentiality of IAU records.

The information Danforth seeks was developed subsequent to Danforth's dismissal.[9] The Board held as a threshold matter that evidence of alleged inconsistent discipline is not relevant to its review of Danforth's dismissal to the extent that it involves alleged improper conduct by other employees of which management was unaware at the time Danforth was dismissed. The Board considered twelve factors set forth in *In re Colleran*, 6 V.L.R.B. 235, 265 (1983), to determine whether to grant Danforth's request. *Id.* at 266-69. The Board found that one factor, "the consistency of the penalty with those imposed upon other employees for the same or similar offense," rendered examination of the requested IAU records irrelevant. Since the Board's duty is "to police the exercise of discretion by the employer," *In re Gage*, 137 Vt. 16, 19, 398 A.2d 297, 299 (1979), the Board found the relevant focus is on management's actions and knowledge at the time the decision to dismiss Danforth was made, and that any alleged improper employee conduct of which management was unaware at the time of her dismissal is not relevant. Additionally, the Board's decision was based in part out of consideration for the purported statutory purpose of 20 V.S.A. § 1880, which arguably contemplates expeditious resolution of appeals by calling for a hearing to be scheduled within 60 days after an appeal is taken. 20 V.S.A. § 1880(c). To allow an appellant to delve into post-dismissal conduct, the Board observed, would have

---

[8] Danforth initially sought access to IAU records concerning two state police members, but on appeal pursues only the subpoena request for information relating to one of the members.

[9] Specifically she seeks: (1) IAU records relating to any request that a named state police lieutenant appear for an interview with an internal affairs investigator, or any other form of investigation, relating to allegations that the lieutenant lied in his deposition given in this case; and (2) documents relating to any charges or disciplinary action brought against the lieutenant based on his deposition testimony.

the very real potential of creating ongoing discovery that continuously pushes back the date the case can be heard.

Again, as noted above, we will defer to Board decisions with regard to matters committed to its discretion, presuming they are correct and reasonable, and will not overturn them unless they are shown to be clearly erroneous. See *In re AFSCME, Local 490*, 153 Vt. at 321, 571 A.2d at 65.

*We affirm the Board's decision to order release of redacted IAU records, affirm the Board's decision denying Danforth's request for command and review sheets, and affirm its decision denying Danforth's request for IAU records of investigations conducted subsequent to her dismissal.*

**Dooley, J.,** dissenting. Respectfully, I dissent from Part II of the majority opinion. It is black letter law that evidence which is covered by an evidentiary privilege cannot be admitted into evidence, see V.R.E. 501, or discovered, see V.R.C.P. 26(b)(1). Evidentiary privileges apply in administrative proceedings. See 3 V.S.A. § 810(1). We held in *State v. Roy*, 151 Vt. 17, 32, 557 A.2d 884, 893 (1989), that:

> The specific records that the defendant requested are made confidential by 20 V.S.A. § 1923(d). There is no exception in the statute for use of the records in court proceedings. It is clear that the intent of the statute is that the records not be subject to disclosure except for the statutory purposes. Thus, the statute creates a form of evidentiary privilege in a court proceeding. See *Camp v. Howe*, 132 Vt. 429, 433, 321 A.2d 71, 73 (1974); V.R.E. 501.

There is also no exception in the statute for administrative or personnel grievance proceedings. Thus, the statute creates an evidentiary privilege with respect to those proceedings as well.

Up to this point, the majority and I appear to agree on the relevant law. We part company, however, when we address our power to allow discovery despite the statutory privilege — the majority holds we can and should allow the discovery; I would hold that we cannot, whatever may be our policy preferences.

The majority suggests two ways around the privilege. First, it holds that we can implement our "reluctance to interfere with the truth seeking function of litigation" through judicially-created exceptions to absolute privileges. Certainly, we can do that in instances where we have created, or are being asked to create, the privilege at common

law, as in the two instances cited by the majority. *In re Inquest Proceedings*, 165 Vt. 549, 551, 676 A.2d 790, 792-93 (1996) (mem.); *Douglas v. Windham Superior Ct.*, 157 Vt. 34, 40, 597 A.2d 774, 777-78 (1991). Despite our policy preferences, however, we have no power to override the Legislature's definition of the scope of a privilege. See *State v. Henneberry*, 558 N.W.2d 708, 710 (Iowa 1997) ("The creation of an exception to the statutory privilege is solely within the province of the legislature, and not the judiciary."). Here, the Legislature has not made an exception for court or administrative proceedings.

The second way is taken from *State v. Roy*. *Roy* was a criminal case in which the defendant wanted access to the personnel records of the arresting officer to determine whether he had been disciplined in the past for using excessive force in an arrest. We recognized in *Roy* that although the privileged nature of the disciplinary file prohibited defendant's access as a matter of state law, it did not necessarily overcome his sixth amendment compulsory process right to present evidence in his favor as developed in *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987). *Roy*, 151 Vt. at 32-35, 557 A.2d at 894-95.

*Ritchie* was also a criminal case in which the defendant was charged with sexually assaulting his daughter and sought access to records of the state child protection agency relating to a prior report of sexual abuse by the defendant against the victim. The records were covered by a statutory evidentiary privilege, but the Court held that the defendant's right to present evidence in his favor could overcome the privilege if the trial court found the evidence material to the defendant's guilt or punishment. See *id.* at 55-58. To make this determination, the Court held, the information should be submitted to the trial court for in camera inspection. See *id.* at 60.

For a variety of reasons, we held in *Roy* that *Ritchie* did not require even an in camera inspection of the personnel file in that case. 151 Vt. at 34-35, 557 A.2d at 894-95. We added, however, that "[w]e do not exclude the possibility that a defendant could have access to internal investigation files in a proper case and in a proper manner." *Id.* at 35, 557 A.2d at 895. The majority has taken this phrase out of context to justify access to the personnel file in this case.

The phrase related solely to the sixth amendment right, as explicated in *Ritchie*, that would require access to the privileged material as a matter of federal constitutional law. The *Ritchie* rationale is applicable only to criminal cases. There is no similar constitutional right to present favorable evidence in a civil case. See *Gilbert v. Superior Ct.*, 238 Cal. Rptr. 220, 227-28 (Ct. App. 1987); *Giesing v.*

*Blefeld*, 2001 WL 56437, *3 (Conn. Super. Ct. 2001); *V.B.T. v. Family Servs. of W. Pa.*, 705 A.2d 1325, 1335 (Pa. Super. Ct. 1998). There is no due process right to discovery in a civil case or administrative proceeding. See *Soc'y of Lloyd's v. Ashenden*, 233 F.3d 473, 480 (7th Cir. 2000); *Silverman v. Commodity Futures Trading Comm'n*, 549 F.2d 28, 33 (7th Cir. 1977) (administrative proceeding). The majority has articulated no constitutional right of access to the personnel information that would allow the Board or this Court to override the statutory privilege.

Even if we were to somehow apply *Ritchie* by analogy, I cannot agree that we can uphold the broad order of the Board in these circumstances. Although Danforth alleged that the charges against her, and the decision to terminate her, were motivated by gender discrimination and retaliation for grievance and whistleblowing activity, she made no factual showing that there was evidence of lack of uniformity in disciplinary sanctions that would be shown by the IAU records. She has not alleged that any other officer was ever disciplined for conduct even remotely similar to that alleged against her. Her counsel admitted in his argument before this Court that he had no such evidence and shouldn't be expected to have it until he examined the records. Thus, the subpoena request was a pure fishing expedition, hoping counsel would find fish in the IAU sea.

In *Ritchie*, the Supreme Court tailored its remedy to the interests involved and did not allow access to privileged information merely in the hope of discovering helpful information:

> A defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through the Commonwealth's files. . . . [T]his court has never held — even in the absence of a statute restricting disclosure — that a defendant alone may make the determination as to the materiality of the information. . . . In the typical case where a defendant makes only a general request for exculpatory material under *Brady v. Maryland*, . . . it is the State that decides which information must be disclosed.

*Ritchie*, 480 U.S. at 59 (internal citations omitted). Thus, at a maximum, *Ritchie* supports only that a party can require the adjudicatory body to conduct an in camera inspection to determine the materiality of the privileged information, and not that the party can make that materiality decision. The Board failed to impose that limit here.

248

I think, however, there is a more important requirement that the Board ignored. The majority of courts that have addressed the issue have required a threshold showing of some degree of relevance before allowing a defendant to pierce a privilege. See, e.g., *Commonwealth v. Bishop*, 617 N.E.2d 990, 995 n.5 (Mass. 1993) (listing cases from other states that have required an initial showing of relevance). Thus, the *Bishop* court required that the defendant "advance, in good faith, at least some factual basis which indicates how the privileged records *are likely* to be relevant to an issue in the case ...." *Id.* at 996-97 (emphasis added). This is consistent with our holding in *Douglas v. Windham Superior Court* that an in camera inspection can be ordered only based on some showing of need. 157 Vt. at 43-44, 597 A.2d at 779-80.

These requirements to protect the confidentiality of the information are particularly critical in a case like this where the litigant seeks extensive privileged records of many persons. Danforth's position is that all state police disciplinary records generated since 1995 should become public so that she can search through them to try to make a case. Even the Board's narrowing of the request will make a substantial part of the disciplinary records public. I recognize that names will be redacted from the records, but I share the concern of the State that in a small state like Vermont the redaction of the names is an inadequate, and likely ineffective, protection of privacy.

Danforth has made no showing of likely materiality, and the Board has failed to impose restrictions that will protect the confidentiality of the information in the IAU records. Even if I believed that the Board could override the careful and specific confidentiality protection contained in 20 V.S.A. § 1923(d) in any case, I cannot endorse the way it has done so in this case.

I am authorized to state that Justice Morse joins in this dissent.